THEODORE REGNANTE, executor, vs. MARY BALDASSARE
& others.[1]

Essex.  April 14, 1983. — May 4, 1983.

Present: GREANEY, CUTTER, & PERRETTA, JJ.

*Tenants by the Entirety.  Insurance,* Tenants by the entirety.

Where a building damaged by fire was owned by a husband and wife as
   tenants by the entirety and the estate was acquired before the effective
   date of St. 1979, c. 727, amending G. L. c. 209, § 1, upon the hus-
   band's death the wife, rather than the husband's estate, was entitled to
   the proceeds under a fire insurance policy naming both husband and
   wife as insureds.  [720-721]

CIVIL ACTION commenced in the Essex Division of the
Probate and Family Court Department on July 22, 1981.

The case was heard by *Buczko,* J.

*Mark J. Favaloro* for the plaintiff.

*John J. Twomey* for Mary Baldassare.

CUTTER, J.  On June 19, 1979, Dante Baldassare and
Mary Baldassare owned, as tenants by the entirety, premises
in Peabody.  They were then still married to each other, but
divorce proceedings were pending.  On that date, also, the
house on the premises was damaged by fire.

The Merrimack Mutual Fire Insurance Company (the in-
surer) had issued to the Baldassares on July 31, 1978, an in-
surance policy (including fire coverage) under which the
named insureds were "Dante Baldassare & Mary J. Baldas-
sare."  The policy contained what was apparently a "boiler-
plate" printed provision reading in part, "DEATH OF
NAMED INSURED:  In the event of death of the Named

---

[1] Merrimack Mutual Fire Insurance Company, Louis J. Panakio, and
the Department of Public Welfare.

Insured, the definition of "Insured" is modified as follows: [and] the Named Insured shall mean: (1) the spouse, if a resident of the household at the time of such death;[2] and (2) the legal representative but only with respect to the premises and property of the deceased covered under this policy at the time of such death . . . ." The policy was in force on the date of the fire.

Panakio (see n.1), a fire loss adjuster, negotiated with the insurer a settlement of $23,118.30 for the fire loss. This was acceptable to Dante Baldassare, but not to Mrs. Baldassare, who refused to sign a proof of loss for that amount.

On December 16, 1980, Dante Baldassare died testate. Mr. Regnante was appointed special administrator of Baldassare's estate with authority to settle the fire claim. On April 14, 1981, the insurer issued a draft for the settlement amount payable to the special administrator, Panakio, Mrs. Baldassare, and the Commonwealth. Mr. Regnante, as executor of the will of Dante Baldassare, sought declaratory relief in the Probate Court concerning the disposition of the proceeds of the draft.

It was stipulated (a) that, upon deposit of the settlement in court, the insurer should be declared free from further liability, (b) that $2,311.83 be paid to Panakio from the settlement proceeds for adjustment services, and (c) that a further sum of $2,407.67 be paid to the Commonwealth for medical services rendered to Mrs. Baldassare through the Department of Public Welfare. No dispute remains for decision about the issues and payments thus stipulated.

On March 2, 1982, a probate judge entered a judgment based upon the stipulation and a statement of agreed facts setting forth essentially the facts stated above. After the stipulated deductions for payments of Panakio, and the Commonwealth, and a court awarded fee of $840 to Mr. Reg-

---

[2] The record does not show that either spouse was a resident of the house on the date of Dante Baldassare's death, if that is in any way relevant. The probate judge found that the Baldassares were husband and wife until his death on December 16, 1980. His will was allowed on April 28, 1981.

nante,[3] the remainder of the insurance proceeds was award-
ed to Mrs. Baldassare. The husband's executor contends
that the award, in part at least, should have been made to
the husband's estate which he argues would have been in
accordance with the insurance policy provision quoted
above.

It has not been shown that any part of the settlement was
made with respect to separately owned tangible personal
property of Dante Baldassare. The entire settlement ap-
pears to have been made with respect to the damaged
house. Both spouses were named insureds. The real estate
was held by them as tenants by the entirety under a 1953
deed to them from a corporate grantor (although the record
concerning the deed is somewhat truncated). That both
spouses were insureds is consistent with the circumstance
that the insured house was held by them by the entirety.

The quoted printed provision of the policy (concerning
the definition of "named insured" in the event of his or her
death) seems wholly inapposite and ambiguous when the
named insureds are husband and wife holding by the entire-
ty and one insured spouse is survived by the other. No evi-
dence suggests that either insured spouse or the insurer
intended to do more (or less) than to insure the estate by the
entirety, in accordance with its usual 1953 incidents. We
regard the printed provision as having no clear relevance to
the distribution of the insurance proceeds and deal with the
proceeds as so closely related to the estate by the entirety as
to be essentially a substitute for the damaged property. See
1 Pomeroy, Equity Jurisprudence § 161 (5th ed. 1941).

As the estate by the entirety was acquired by the Baldas-
sares well prior to the effective date (February 11, 1980) of
St. 1979, c. 727, amending G. L. c. 209, § 1, we (as did the
probate judge) view the insured estate (and its insurance

---

[3] It was originally contended by Mrs. Baldassare that Mr. Regnante had
not been her attorney and was not entitled to be paid from the proceeds of
the draft. That contention has not been argued and we treat it as waived.
The reasons for the appointment of the special administrator are not ap-
parent from the record. See note 2, *supra.*

proceeds) as having the usual incidents of an estate by the entirety existing in 1953 when the estate was accepted voluntarily by both spouses. See *West* v. *First Agricultural Bank,* 382 Mass. 534, 543-552 (1981). See also *Krokyn* v. *Krokyn,* 378 Mass. 206, 215-216 (1979).

In 1953, the incidents of an estate by the entirety in real estate were well established. See *Bernatavicius* v. *Bernatavicius,* 259 Mass. 486, 487-489 (1927); *Licker* v. *Gluskin,* 265 Mass. 403, 404-407 (1929); *Pineo* v. *White,* 320 Mass. 487, 490-492 (1946); Park & Park, Real Estate Law § 129 (1981 & 1982 Supp.). In general, see also *Smith* v. *Smith,* 361 Mass. 733, 737 (1972). The husband was entitled to possession and control of the premises during marriage and to any rents and profits,[4] but upon the death of either spouse, the survivor would take the whole estate. Other incidents need not be recited here.

In Massachusetts an estate by the entirety may exist in personal property. See *Campagna* v. *Campagna,* 337 Mass. 599, 605-606 (1958). The proceeds of a taking by eminent domain of real estate owned by the entirety remain property of the entirety. See *Ronan* v. *Ronan,* 339 Mass. 460, 464 (1959). See also *Purple* v. *Purple,* 354 Mass. 770 (1968). So do proceeds of a sale of the estate. *Smith* v. *Tipping,* 349 Mass. 590, 592 (1965). We perceive no reason why insurance proceeds of the destruction of a building owned by the entirety should not remain an asset held by the entirety. See Annot., 64 A.L.R.2d 8, 47-62 (1959). The case of *Hawthorne* v. *Hawthorne,* 13 N.Y.2d 82, 85-86 (1963), relied on by Baldassare's executor, seems to us distinguishable on the basis, among others, that "an inseverable tenancy" in personalty is not recognized in New York. See 4A Powell, Real Property par. 624. (Rohan ed. 1981 & 1982 Supp.).

*Judgment affirmed.*

---

[4] The record does not show that there were any rents and profits between the date of the fire and Dante Baldassare's death. No argument is made for Baldassare's executor that the estate is entitled to any such rents and profits.