Frank C. GAUNT and Cheryl C. Gaunt, Plaintiffs–Appellants,

v.

SHELTER MUTUAL INSURANCE COMPANY, Defendant–Respondent,

and

State of Missouri, Division of Child Support Enforcement, Intervenor–Appellant.

Nos. 16927, 17092.

Missouri Court of Appeals, Southern District, Division Two.

April 26, 1991.

James R. Fossard, Pratt & Fossard, Springfield, for plaintiffs-appellants.

Janet Garrett, Springfield, for intervenor-appellant.

M. Sean McGinnis, Turner, Reid, Duncan, Loomer & Patton, P.C., Springfield, for defendant-respondent.

FLANIGAN, Chief Judge.

Frank C. Gaunt and Cheryl C. Gaunt, his wife, plaintiffs-appellants, brought this action against Shelter Mutual Insurance Company, defendant-respondent, seeking recovery on a fire insurance policy issued by Shelter to the Gaunts. The claim arose out of a fire which occurred on November 8, 1985, and caused damage to a house and its contents owned by the Gaunts.

On March 29, 1990, the State of Missouri, Division of Child Support Enforcement (the Division), was granted leave to intervene. The Division's interest in the proceeding was allegedly based on § 454.518,[1] which provides, in pertinent part: "The director [of the Division] may cause a lien for unpaid and delinquent child or spousal support to be placed upon any and all claims, counterclaims, or suits at law of any obligor delinquent in child or spousal support payments."

On May 10, 1989, prior to intervening, the Division filed with the circuit clerk a document entitled "Notice of Lien on Claims, Counterclaims and Suits at Law." The body of that document read, in pertinent part:

"PLEASE BE ADVISED that pursuant to Section 454.518, RSMo, the Director of the Division of Child Support Enforcement hereby places a lien upon any claims, counterclaims, and suits at law payable to the obligor named below, who is delinquent in spousal and/or child support payments in an amount exceeding one hundred dollars.

Name of Obligor: Cheryl Sue Gaunt
Name of Support Obligee: John J. Cioni, Jr.
Amount of Delinquent Support: $4387.00

Pursuant to Section 454.518.5, RSMo, the Clerk of the Court shall mail a copy of this notice to the obligor and to all attorneys of record.

This lien shall attach to all benefits payable to the obligor named, five days

1. All references to statutes are to RSMo 1986, V.A.M.R., and all references to rules are to Missouri Rules of Court, V.A.M.R.

after the date of mailing entered below by the Clerk."

On May 11, 1989, the circuit clerk mailed a copy of the foregoing notice to the Gaunts and Shelter. The Division's lien was based on delinquency in child support payments which plaintiff Cheryl Gaunt had been ordered to pay to her former husband in a prior dissolution action.

While the proceeding was pending in the trial court, settlement negotiations took place between the Gaunts and Shelter. On June 21, 1990, Shelter filed a document entitled "Defendant's Counter-claim to Enforce Agreement to Settlement (sic)." The counterclaim alleged, among other things, the following: The Gaunts and Shelter had agreed to settle all claims of the Gaunts against Shelter "with Shelter agreeing to pay the Gaunts $9,500"; immediately after the Gaunts and Shelter agreed to settle all claims, Shelter received the lien notice set forth above, and also received an "Order to Withhold and Pay Over," dated May 9, 1989, entered by the Circuit Court of Greene County, Missouri, pursuant to filing by [the director], under the authority of § 454.505 [2]; in accordance with the notice of lien and the order to withhold and pay over, Shelter issued two settlement drafts, one in the amount of $3,900 [3] payable to the Gaunts, their attorney [James R. Fossard], and the circuit clerk, "in recognition of the lien imposed and court order"; the other draft, in the amount of $5,600, was made payable to the Gaunts and attorney Fossard.

Shelter's counterclaim sought an order enforcing the settlement agreement.

The Gaunts filed an "Answer" to Shelter's counterclaim. That answer, which admitted some of the allegations of the counterclaim and denied others, pleaded that

the Gaunts denied that Shelter "made the settlement drafts in accordance with any notice of lien since the [drafts] were made at a time after which the lien had been withdrawn and terminated. Shelter did make two settlement drafts, but they were not made in recognition of any lien nor court order."

After the state had intervened, the court, after an evidentiary hearing, sustained a motion of the Gaunts which requested an order directing the circuit clerk to endorse the $3,900 draft (on behalf of the state) and to deliver it to James R. Fossard, attorney for the Gaunts.

Following a later evidentiary hearing, the trial court entered a judgment which, in effect, upheld Shelter's counterclaim seeking enforcement of the settlement agreement and found that Shelter, in recognition of the lien notice, had not breached that agreement by issuing the two drafts instead of one. The Division and the Gaunts filed separate appeals. Those appeals have been consolidated in this court and will be dealt with respectively.

## No. 16927—APPEAL OF DIVISION OF CHILD SUPPORT ENFORCEMENT

The Division contends that the trial court erred in determining that the $3,900 draft payable to the circuit clerk, the Gaunts, and James R. Fossard, their attorney, was property held as tenants by the entireties and that the Division's lien was not valid "in that the [draft] was payable to others besides the Gaunts as husband and wife and as such was subject to the lien."

The Division cites § 454.528.1 which reads:

"The interest of one or more owners of any real or personal property held in joint tenancy with right of survivorship,

---

**2.** In 1989, § 454.505 read, in pertinent part: "1. In addition to any other remedy provided by law for the enforcement of support, if an order has been entered by the director pursuant to sections 454.460 to 454.505 and an arrearage exists on the payments required, the director shall issue an order directing any employer or other payor of the parent to withhold and pay over to the department or the clerk of the circuit court in the county in which the order of the director was docketed

pursuant to section 454.490, money due or to become due the obligated parent in an amount not to exceed federal wage garnishment limitations, until all arrearages under such administrative order are paid in full...."

**3.** None of the parties mentions the fact that the lien notice stated that the amount of delinquent support was $4,387 rather than $3,900.

or otherwise held in any form of joint interest, *except for property held in the name of a husband and wife and no other,* are subject to execution as provided in this section for the sole purpose of enforcing judgments or orders for child support or maintenance." (Emphasis added.)

The Division's brief concedes that if Shelter had "allowed" the claim of the Gaunts under their insurance policy, "an insurance draft would have been made payable to Frank Gaunt and Cheryl Gaunt. The draft would have been personal property held by Frank Gaunt and Cheryl Gaunt, husband and wife, as tenants by the entireties." The Division argues, however, "[The $3,900 draft] issued in the names of four persons cannot be said to be personal property held by the persons as tenants by the entireties. Clearly even the insurance draft [the $5,600 draft] made payable to Frank Gaunt and Cheryl Gaunt and James R. Fossard, their attorney, is not personal property held only by the Gaunts as tenants by the entireties."

The Division says: "Since the insurance drafts are not held only in the names of Cheryl Gaunt (the obligor who owes the child support) and her husband, Frank Gaunt, but are also held in the names of the attorney and the circuit clerk, then the insurance drafts are personal property subject to attachment for child support pursuant to Section 454.518 RSMo. Simply put, the checks are not in the name of husband and wife and no other and are subject to execution pursuant to the statute."

■ The Division concedes, at least tacitly, that the property which was damaged by the fire was owned by the Gaunts as tenants by the entirety. "In this state, an estate by the entirety exists in both real and personal property." *Cann v. M & B Drilling Company,* 480 S.W.2d 81, 84 (Mo. App.1972). "So long as the spouses remain married, a tenancy by the entirety may be terminated or severed only by joint and mutual action on the part of husband and wife." *Ronollo v. Jacobs,* 775 S.W.2d 121, 123 (Mo. banc 1989). In the absence of evidence indicating a contrary intention by both parties, a tenancy by the entirety will be presumed to follow the proceeds of the sale of entirety property. *Id.* Neither spouse may dispose of an interest in the estate by the entirety without the assent of the other, *Baker v. Lamar,* 140 S.W.2d 31, 35 (Mo.1940), and a judgment against one would not constitute a lien on the property since neither has a separate interest subject to execution. *Id.* See also *Vaughn v. Spitz,* 682 S.W.2d 847, 848 (Mo.App.1984); *U.S. Fidelity & Guar. Co. v. Hiles,* 670 S.W.2d 134, 137 (Mo.App.1984); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Shackelford,* 591 S.W.2d 210, 215 (Mo.App. 1979).

In *Farmer v. Miller,* 746 S.W.2d 661 (Mo.App.1988), one Duncan was delinquent under a judgment for child support entered in favor of a former wife. Duncan and his second wife purchased some real estate as tenants by the entirety and gave a deed of trust securing the payment of their joint note. Later they executed a second deed of trust in favor of Transamerica. A foreclosure sale under the first deed of trust resulted in a surplus. The first wife, as judgment creditor, and Transamerica made conflicting claims to the surplus. The court of appeals held that the trial court properly awarded the surplus to Transamerica and that the first wife had no valid claim to it. The court said that "a debt by one party cannot create a lien on property held as tenants by the entirety," and emphasized the fact that § 454.528.1, in giving authority for a lien for child support against jointly held property, specifically excepts property held in the name of a husband and wife.

■ Here the insured property was not sold, but it was damaged by the fire. Other jurisdictions hold that the tenancy by the entirety continues in insurance proceeds paid for damage to the property so held, as well as in the proceeds of a sale of it. *Cooper v. Cooper,* 225 Ark. 626, 284 S.W.2d 617 (1955); *Masterman v. Masterman,* 129 Md. 167, 98 A. 537 (1916); *Regnante v. Baldassare,* 15 Mass.App.Ct. 718, 448 N.E.2d 775 (1983); *Dorf v. Tuscarora Pipe Line Co.,* 48 N.J.Super. 26, 136 A.2d

778 (1957); 41 Am.Jur.2d Husband and Wife, § 66. See 22 A.L.R. 4th 459 (proceeds or derivatives of real property held by entirety as themselves held by entirety.)

The $9,500 for which the Gaunts settled their claim against Shelter represented a compromise in the amount of insurance proceeds payable for the fire loss of the property held by the Gaunts as tenants by the entirety. This court holds that the tenancy continued to exist in the settlement sum.

■ The Division argues, however, that the inclusion of the names of the attorney and the circuit clerk on the $3,900 draft placed it outside the exception contained in § 454.528.1 set out earlier. There is no merit in that contention.

In *Jenkins v. Jenkins*, 243 S.W.2d 804 (Mo.App.1951), Esther Jenkins was a judgment creditor of Lawrence Jenkins by reason of his failure to pay child support. Lawrence Jenkins had a personal injury claim against a railroad and hired attorney Barnett to prosecute that claim. The claim was settled and a draft was issued payable to Lawrence Jenkins and attorney Barnett. A garnishment proceeding was brought by Esther Jenkins against Barnett. Resisting the garnishment, Barnett argued that the draft represented joint funds of him and Lawrence Jenkins and that the funds were not subject to garnishment for the judgment debt of one debtor.

Rejecting the attorney's argument, the court said, at 243 S.W.2d 807:

" "The fact that the draft named Jenkins and Mr. Barnett, his attorney, as payees did not vest any ownership in Mr. Barnett. It was his client's settlement, and Barnett was named as payee in his capacity as attorney for Jenkins, so that he might enforce the lien that he had upon his client's suit. A joint fund means a fund in which two or more persons have a property right. All the garnishee had by reason of his services as attorney, was a lien, and as we stated in *Koenig v. Leppert–Roos Fur Co.*, Mo.App., 260 S.W. 756, 758, 'A lien is not a property in

or right to the thing itself, but constitutes a charge or security thereon.' The question of joint funds therefore is not in the case."

In *Jenkins*, the court permitted attorney Barnett to enforce his lien, but ownership of the fund represented by the draft was in Lawrence Jenkins.

Here, attorney Fossard had an enforceable lien on the settlement proceeds. That lien, however, under *Jenkins*, gave attorney Fossard no ownership interest in the fund represented by the $3,900 draft. The ownership of that fund was in the Gaunts as tenants by the entirety and thus within the protection of the exception set forth in § 454.528.1, dealing with "property held in the name of a husband and wife and no other."

Similarly, the addition of the circuit clerk as a payee on the $3,900 draft did not disturb the Gaunt's tenancy by the entirety in the fund represented by that draft. The circuit clerk had no individual ownership interest in that fund but was merely a statutory agent of the state to receive payment in honor of its alleged lien. The Division's appeal has no merit.

## No. 17092—APPEAL OF FRANK C. GAUNT AND CHERYL C. GAUNT

The judgment of the trial court, which sustained Shelter's counterclaim for enforcement of the settlement, contained several findings, including the following: The Gaunts and Shelter agreed to settle all claims on or about October 31, 1989, for $9,500; in accordance with the agreement, Shelter tendered two drafts [the $3,900 draft and the $5,600 draft described in the fifth paragraph of this opinion]; the $3,900 draft was "in recognition of a notice of lien filed by [the Division]"; the Division "has at no time since August 31, 1989 (sic), withdrawn, negated or otherwise extinguished its notice of lien"; "in acknowledging and recognizing said notice of lien, and by including [the Division] as a payee," [4] Shelter and its attorney "have not breached or otherwise negated the settlement agreement"; "the settlement agree-

---

4. As previously noted, the circuit clerk, and not the Division, was a payee.

ment is binding upon [the Gaunts and Shelter] and all claims of [the Gaunts] against [Shelter] as stated in plaintiffs' petition herein are settled, agreed and compromised, and this action against [Shelter] is dismissed with prejudice."

The Gaunts contend that the trial court erred in sustaining Shelter's counterclaim to enforce the settlement between the Gaunts and Shelter because: (a) the Division "had already withdrawn and relinquished its lien it originally claimed pursuant to § 454.518," and (b) Shelter breached the settlement agreement because "there was never an agreement between the Gaunts and Shelter that two settlement drafts be issued, one bearing the name of State of Missouri Division of Child Support Enforcement."

■ There is no factual support for ground (a). The lien notice of May 10, 1989, set forth in the third paragraph of this opinion, was never withdrawn. In addition to the lien notice, which was mailed to Shelter on May 11, 1989, Shelter received another communication from the Division. The latter was an order of the Division dated May 9, 1989, directed to Shelter "under the authority of § 454.505 to withhold and pay over certain amounts of monies due from [Shelter] to Cheryl Gaunt."

On May 18, 1989, the Division terminated the order of May 9, 1989, and sent Shelter a notice of that termination. It is this notice on which the Gaunts advance ground (a). The notice, however, as Shelter points out, made no mention of the lien notice, nor did it contain any waiver of the lien under § 454.518 or even a mention of that statute.

Section 454.505.1, which is set forth in footnote 2, deals with enforcement of an order which "has been entered by the director pursuant to sections 454.460 to 454.505." Nothing in the instant record shows that such an administrative order was ever issued and that in turn may be the reason for the termination notice of May 18, 1989.

At the evidentiary hearing on Shelter's counterclaim, Kay Reeve, an employee of the Division, testified that at no time was the notice of lien withdrawn. She also testified that after the termination order of May 18, 1989 was issued, she contacted the attorney for Shelter and told him "that it was only the order to withhold and pay over that was terminated, the lien had not been terminated nor will it be terminated."

■ In support of ground (b), the Gaunts state: "[They and Shelter] did have an agreement to settle the case, however, Shelter did not live up to the terms of that agreement.... The agreement to settle involved the requirement of a payment of a check for $9,500 made payable to the Gaunts and their attorney and no others. This material fact and condition of the contract and agreement never varied between the parties, yet, somewhere along the line, Shelter's counsel apparently developed the idea that the lien of the State of Missouri for back due child support which the state sought to impose under § 454.518 must somehow be recognized and acknowledged in spite of the fact that the statute itself excepts property held in the name of a husband and wife from such levy and lien."

The Gaunts make no challenge to the authority of the trial court to enforce the settlement agreement. Such authority was upheld in *Pathway Financial v. Schade*, 793 S.W.2d 464, 469 (Mo.App.1990); *Maxwell v. Maxwell*, 775 S.W.2d 576, 578 (Mo.App.1989); *Randall v. Harmon*, 761 S.W.2d 278, 279 (Mo.App.1988); *Landmark Bank v. First National Bank in Madison*, 738 S.W.2d 922, 923 (Mo.App.1987); *Wenneker v. Frager*, 448 S.W.2d 932, 936 (Mo.App.1969).

Although the usual device used to seek enforcement of a settlement agreement is a motion seeking specific performance, the court in *Pathway Financial* pointed out that Missouri has no rule defining the procedure for enforcing a settlement agreement in a pending case. In *Wenneker*, the court cited authorities permitting enforcement by petition or motion in the original action. The Gaunts have not challenged Shelter's use of a counterclaim, as distinguished from a motion.

Before Shelter issued any drafts in payment of the $9,500 settlement, it received

the notice of lien dated May 10, 1989. In disposing of the Division's appeal, this court has ruled that the state had no lien and that the trial court properly so ruled. Prior to those rulings, Shelter attempted to honor the settlement agreement and at the same time to recognize the fact that the state was asserting what later proved to be an invalid lien. There is no claim that Shelter acted other than in good faith in so doing, and nothing in the record would support such a claim.

In *Ellis Gray Milling Co. v. Sheppard*, 359 Mo. 505, 222 S.W.2d 742, 748 (Mo. banc 1949), the court said:

"So far as we can find, the rule in this state announced in *Ward v. Haren*, 139 Mo.App. 8, 14, 119 S.W. 446, 448, has not since been departed from, that 'if a party, by his contract, charge himself with an obligation possible to be performed, he must make it good unless its performance is rendered impossible by an act of God, *the law*, or the other party. Unforeseen difficulties, however great, will not excuse him.' " (Emphasis added.)

By reason of this court's affirmance of the trial court's judgment, Shelter's full performance of the settlement agreement is possible. The inquiry is whether the delay in effecting that settlement, occasioned by Shelter's good faith recognition of the state's assertion of a lien, amounted to a breach of that agreement by Shelter.

Section 261, Restatement of Contracts, 2d, reads:

"Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary."

Section 264, Restatement of Contracts, 2d, reads:

"If the performance of a duty is made impracticable by having to comply with a domestic or foreign governmental regulation or order, that regulation or order is an event the non-occurrence of which was a basic assumption on which the contract was made."

Comment b under § 264 reads:

"Under the rule stated in this Section, the regulation or order may be domestic or foreign. It may emanate from any level of government and may be, for example, a municipal ordinance or an order of an administrative agency. Any governmental action is included and technical distinctions between 'law,' 'regulation,' 'order' and the like are disregarded. It is not necessary that the regulation or order be valid, but a party who seeks to justify his non-performance under this Section must have observed the duty of good faith and fair dealing imposed by § 205 in attempting, where appropriate, to avoid its application. The requirement is like that of Uniform Commercial Code § 2–615, under which compliance in good faith is sufficient regardless of the validity of the regulation or order. See Comment 10 to Uniform Commercial Code § 2–615. The regulation or order must directly affect a party's performance in such a way that it is impracticable for him both to comply with the regulation or order and to perform."

See also 17A Am.Jur.2d Contracts, § 696; 18 Williston on Contracts, 3d Ed., § 1939; 6 Corbin on Contracts, § 1346 (1962).

The settlement agreement required Shelter to pay the Gaunts and their attorney $9,500. Shelter sought to do so by issuing two drafts totaling that amount. Shelter included the circuit clerk as a payee on the $3,900 draft in an effort to recognize the lien asserted by the Division under § 454.518. If the Gaunts had so desired, Shelter doubtless would have issued only one draft, so long as the circuit clerk was named as a payee.

No Missouri case involving this situation has been cited by the parties nor found by this court's independent research. Some guidance may be found by analogy in § 400.2–615(a), which excuses, under certain circumstances, a seller's *delay* in delivery or nondelivery "by compliance in good faith with any applicable foreign or domestic governmental regulation or order whether or not it later proves to be inval-

id." Section 400.2–615(a) is Uniform Commercial Code § 2.615, mentioned in Comment b under § 264, Restatement of Contracts, 2d, supra.

This court holds that Shelter did not breach the settlement agreement by making the circuit clerk a payee on the $3,900 draft in recognition of the Division's assertion of a lien under § 454.518, even though no valid lien existed, and that Shelter was entitled to enforcement of the settlement agreement. The appeal of the Gaunts has no merit.

Shelter has filed a motion under Rule 84.19 seeking an award of damages from the Gaunts on the ground that their appeal is frivolous. That motion is denied.

The judgment of the trial court requires modification because it does not specifically require that Shelter make payment of $9,500 to the Gaunts and attorney Fossard. The trial court did order dismissal of the action with prejudice. That dismissal should be conditioned upon such payment.

The trial court previously ordered the circuit clerk to endorse the $3,900 draft. The record does not reflect the present location of the $3,900 draft or the $5,600 draft. If the clerk has endorsed the $3,900 draft and Shelter has both drafts available for delivery to the Gaunts and their attorney, and the drafts are still valid, the trial court should order such delivery. If they are not so available, the trial court should direct Shelter to stop payment on them and to issue a substitute draft in the amount of $9,500 payable to the Gaunts and attorney Fossard and to deliver same to Fossard. On proof of such delivery, the trial court will enter its order dismissing with prejudice the underlying action of the Gaunts against Shelter. In all other respects, the trial court's judgment of July 13, 1990, is affirmed.

The cause is remanded for further proceedings consistent with this opinion.

PARRISH, P.J., and SHRUM, J., concur.