**In re ESTATE OF Leroy
MORTON, Deceased.**

**No. 57953.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 26, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 14, 1992.

Application to Transfer Denied
Feb. 25, 1992.

Vincent J. Correnti, St. Louis, Walter L. Brady, Jr., Chesterfield, Alan G. Kimbrell, Samuel T. Vandover, Robert L. Brown, Arnold, James E. McDaniel, St. Louis, for appellant.

Edward L. Thomeczek, Clayton, Randall F. Scherck, St. Louis, for respondent.

CRIST, Judge.

Consolidated appeals from a probate order determining the liability of the removed personal representative, her bonding company, and her insurance company. The order was handed down February 16, 1990, by the Circuit Court, Probate Division, St. Louis County.

Fidelity & Deposit Company of Maryland (Bonding Company) appeals that part of the order favoring Robert E. Weis, successor personal representative of the Estate of Leroy Morton, Deceased (successor personal representative), against Shirley M. Morton (Wife) and Bonding Company in the amount of $49,336.87.

Texas County Mutual Insurance Company (Insurance Company) appeals that part of the order finding in favor of Bonding Company and against Insurance Company in the sum of $12,658.48 on Bonding Company's third-party petition.

Marvin L. Smith (Creditor) appeals that part of the order denying himself and his lawyer attorney fees for alleged services rendered the Estate of Leroy Morton, Deceased (Estate), in getting Wife removed as personal representative.

On January 16, 1981, Insurance Company issued an insurance policy to Leroy Morton as named insured. The insurance policy covered a dwelling and its contents in Summersville, Missouri, owned by Leroy Morton and Wife as tenants in the entirety. The residence was insured for $60,000 and the contents for $10,000. There was no satisfactory explanation as to why the insurance policy was issued solely in the name of Leroy Morton.

On August 28, 1981, the residence and its contents were consumed by fire. Leroy Morton and Wife retained attorney Walter Brady to represent them in their attempt to recover the insurance proceeds from Insurance Company. Brady was retained on a one-third contingency fee arrangement.

Leroy Morton died October 12, 1981. Wife was named personal representative of his Estate. Shortly after Leroy Morton's death, Brady reached a settlement with Insurance Company. Under the settlement, $60,000 was paid for the real property and $7,500 for the personal property. Insurance Company paid Wife the $7,500 as an individual, rather than as personal representative of the Estate, based on their determination that she was an insured under the policy. The $60,000 payment was interpleaded into court.

In the interpleader action, the circuit court ordered on April 7, 1983, that the $60,000 deposited into the court registry be paid out to "Shirley M. Morton, Administratrix of the Estate of Leroy Morton, Deceased, and Walter L. Brady, Jr., Attorney at Law." Pursuant to the contingency fee arrangement, Wife paid Brady $20,000 and deposited the remaining $40,000 into the Estate (less $93 in court costs).

On November 2, 1984, Brady filed two motions on behalf of Wife in the St. Louis County Probate Division. One motion requested that the court order the whole $60,000 be released to Wife as her own property. The other motion requested approval of Brady's fee for $20,000 for his representation in the fire loss. On April 21, 1986, the Probate Division denied

Wife's motions. The court ordered Wife as personal representative to make the final settlement of the Estate, and to include the entire $60,000 in the Estate. The court further found that since Brady had not filed a claim within six months of the administration of the Estate for his one-third contingency fee, as required by § 473.360 RSMo, the claim was barred.

On March 27, 1987, Wife was removed as personal representative for the Estate. On June 2, 1987, successor personal representative filed a Petition to Determine Liability of Defaulting Fiduciary. Thereafter, Wife's Bonding Company filed a third-party petition against Insurance Company seeking recovery for the $7,500 in personal property insurance proceeds sought by successor personal representative against Wife and Bonding Company.

In a hearing held August 11, 1988, the Probate Division granted judgment in favor of successor personal representative and against Wife and Bonding Company. The court found Wife liable for the $20,000 paid to Brady plus interest in the amount of $11,796.16. It also found Wife liable for the $7,500 personal property insurance proceeds, plus interest of $5,185.48. Additionally, Wife was found liable in the amounts of $964.23 for Leroy Morton's Estate's failure to file tax returns, and for costs of administration incurred by reason of the removal of Wife as personal representative in the sum of $3,891. Accordingly, the judgment totalled $49,336.87. Further, the court granted judgment in favor of Bonding Company and against Insurance Company in the amount of $12,685.48 ($7,500 personal property insurance proceeds plus $5,185.48 interest) on Bonding Company's third-party petition. Walter Brady was not a party to these proceedings.

■ Bonding Company argues, as one of alternative points, that Brady's fee was an attorney's lien, and thus not a debt of Decedent subject to the six-month claims limit. We agree. There is little question but that Brady should have been paid, and that Wife (and therefore Bonding Company) should get credit for the payment.

Section 484.130, RSMo 1986, provides:

The compensation of an attorney or counselor for his services is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action or counterclaim, which attaches a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosoever hands they may come; and cannot be affected by any settlement between the parties before or after judgment.

The $20,000 paid to Brady were funds subject to his attorney's lien. He had a claim against property, rather than against decedent or his Estate. Once the action was commenced, the attorney's lien attached to the proceeds of the judgment for his client. *See Abbott v. Marion Mining Company*, 255 Mo. 378, 164 S.W. 563, 564 (1914). Brady's contact with Insurance Company as the Morton's legal counsel was sufficient notice to them of a potential attorney's lien for fees. The payout order of April 7, 1983, confirmed that this was an attorney's lien.

Section 473.360.1 requires a broad range of claims against the Estate to be filed within six months after administration. However, Section 473.360.4, RSMo 1986, states in part: "Nothing in this section affects or prevents any action or proceeding to enforce any mortgage, pledge, or other lien upon property of the estate." Brady's lien was not defeated by his failure to file a claim within six months.

■ Having found that Brady was not required to file a claim in the Estate within six months for his contingent fee, the question becomes whether Wife, as administratrix, was entitled to credit for payment of the fee. We find that she was due credit. First, the circuit court initially ordered that such payment be made. Wife cannot be faulted for complying with such an order. Second, the payment was proper in that Brady had a lien on the insurance proceeds under § 484.130. For these reasons, as

well as those given in our disposition below of the $7,500 claim, we find that Wife is due credit of $20,000 for her payment to Brady while Administratrix. We therefore reverse the trial court's judgment finding Bonding Company and Wife jointly liable for $20,000 plus $11,796.16 in interest.

We also reverse the trial court's judgment finding Bonding Company and Wife jointly liable to the successor personal representative, and Insurance Company liable to Bonding Company, for the $7,500 in personal property insurance proceeds plus the $5,185.48 interest.

■ Wife established that she and Decedent had purchased the household goods identified in her Sworn Statement in Proof of Loss. This evidence was not controverted. The insurance policy language clearly granted coverage to "Household and Personal Effects ... belonging to the insured or members of the insured's family of the same household." The policy thus covered Wife's loss of personal property.

Further, an insurance contract covering property held as a tenancy by the entirety requires a closer scrutiny because of the unique manner of ownership. The issue of whether insurance proceeds on property held by the entirety should go to the survivor husband or wife where the deceased was the only named insured on the policy is one of first impression in Missouri.

■ Although an insurance contract is ordinarily a personal contract, rather than running with the property, this is not so where the property is held as a tenancy by the entirety. In a tenancy by the entirety, husband and wife each own the whole property. *See Nelson v. Hotchkiss*, 601 S.W.2d 14, 20[7–9] (Mo.banc 1980). When one dies, the other becomes the sole owner, not by survivorship as in a joint tenancy, but because he or she continues to own the whole. *Id.*

■ The State of Missouri has a vital interest in the continuity of marriage. Absent the showing of a contrary disposition or intent (*see McDivitt v. Pymatuning Mut. Fire Ins. Co.*, 303 Pa.Super. 130, 449 A.2d 612 (1982)), a husband or wife should not be able to exclude the other in the purchase of insurance covering property held by them as tenants by the entirety. *See Worrells v. North Carolina Farm Bureau Mut. Ins. Co.*, 103 N.C.App. 69, 404 S.E.2d 188 (1991); *Carter v. Continental Ins. Co. of New York*, 242 N.C. 578, 89 S.E.2d 122 (1955).

■ In Missouri, an estate by the entirety may exist in either personal property or real property. *Gaunt v. Shelter Mut. Ins. Co.*, 808 S.W.2d 401, 404[1, 2] (Mo.App. 1991). Missouri also holds that a tenancy by the entirety continues in insurance proceeds paid for damage to the property so held. *Id.* at 404–405[3]. Therefore, as a matter of public policy, the proceeds of an insurance policy on property owned by the entirety should presumptively remain an asset held by the entirety when one of the tenants has purchased the insurance, unless it can be demonstrated that the parties intended otherwise. We thus find that Insurance Company did not err in paying Wife the $7,500 personal property insurance proceeds.

■ Finally, Creditor asserts error by the trial court in its failure to grant him attorney's fees for his efforts in getting wife removed as personal representative. The trial court's denial of these fees was correct. To recover attorney's fees in such a case, the activity of the party seeking the fees must be beneficial to the estate as a whole and not just to the individual's interest. *See Estate of Chrisman*, 723 S.W.2d 484 (Mo.App.1987). In this case, it is clear that services rendered were for Creditor's benefit, as he has an allowed claim against the Estate. There is no showing of any benefit to the Estate, and there is no statutory authorization for the recovery of any such fees. Point denied.

We reverse the trial court's judgment concerning Wife and Bonding Company's joint liability for the $20,000 attorney's fee plus interest. We reverse the trial court's judgment finding Wife and Bonding Company liable to successor personal representative, and Insurance Company liable to Bonding Company, for the $7,500 personal

property insurance proceeds plus interest. We affirm the judgment in all other respects.

PUDLOWSKI, P.J., and AHRENS, J., concur.