In re the ESTATE OF Shirley
Mae PERRY, Deceased.

J. Collin BRANNAN, Appellant,

v.

Paul A. PERRY, Individually and as Personal Representative of the Estate of
Shirley Mae Perry, Respondent.

No. 21718.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 29, 1998.

Richard L. Schnake, Springfield, Larry W. Meyer, Aurora, for Appellant.

Robert S. Wiley, Crane, Joseph D. Woodcock, Aurora, for Respondent.

GARRISON, Presiding Judge.

Shirley Mae Perry ("Decedent") died intestate in September 1994. At the time of her death, she was married to Paul A. Perry ("Husband") who was |appointed personal representative of her estate. J. Collin Brannan ("Collin"), a son of Decedent by a former marriage, filed an action to remove Husband as personal representative; to require an accounting based on allegations that Husband had consented to the payment of claims from estate assets for joint secured obli-

gations of he and Decedent; and seeking reimbursement for his attorney's fees. Husband sought an allowance of exempt property. The trial court denied the request that Husband be removed as personal representative; entered a judgment against Husband in favor of the estate for expenses totaling $11,-533.19; denied Collin's claim for attorney's fees; and entered a judgment concerning the exempt property as well as the ownership of other items of personal property. Collin appeals.

Rule 73.01(c) [1] provides the scope of review in this judge tried case. Accordingly, the judgment of the trial court will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

Collin's first point on appeal relates to his claim for an accounting in which he contested Husband's consent, as personal representative, to the payment of claims filed against Decedent's estate by the Stone County National Bank ("Bank"). The claims were for payment of three loans. One of those loans is not at issue here. The two loans that are in issue are described below.

Loan No. 1 was evidenced by a note for $10,000, signed by both Decedent and Husband, and secured by the assignment of a life insurance policy on Husband's life, *including its cash surrender value.* The policy was owned by Husband and had a cash surrender value of approximately $11,240. The proceeds of this loan were apparently used to purchase inventory for an antiques, collectibles, and gift business operated by Decedent and Husband, as well as to repair the building in which it was conducted. The balance of this loan was $10,978.37.

Loan No. 2 was evidenced by an unsecured note for $1500. The note was signed by Husband and guaranteed by Decedent pursuant to a separate instrument. According to Husband, the proceeds of this loan were used "to buy inventory and operating expenses, travel expenses, ... whatever kind of busi-

ness expense we needed it for." The loan balance was $1585.89.

Bank filed a claim against Decedent's estate for the payment of Loans No. 1 and 2. Husband, as personal representative, consented to the claim and made payments in the amounts indicated above from estate assets. In Count II of his suit, Collin sought an accounting concerning all payments made from estate assets, and an order requiring Husband to present evidence of the fair market value of any collateral securing the bank loans. He alleged that no assets had been inventoried in the estate which were security under any of the loans; that Husband wrongfully paid the loans; that Husband had paid personal debts from the estate assets; that Decedent and Husband were jointly and severally liable on the notes; and that the estate is entitled to contribution for Husband's proportionate part of the debts.

The trial court found, among other things, that Decedent and Husband were partners in the antique business; that they borrowed money to finance that business, using the proceeds to pay both business and personal expenses; and that Husband's inventory filed in the estate made no reference to the business or its assets. It concluded that Husband was entitled to have the estate pay only one-half of Loans No. 1 and 2.

Collin's first point relied on is:

The trial court erred in ruling that the estate is entitled to contribution from [Husband] for only half of the amount outstanding on two business loans payable to the Stone County Bank, rather than contribution for the full amount outstanding on those loans, because it is inequitable to require the estate to pay the debt, in that upon Decedent's death Husband became the sole owner of the business assets, the value of which equaled or exceeded the amount of the debt, and also received his life insurance policy back free of the lien of the loan, and hence the estate received no corresponding benefit of the assets in consideration of its payment.

---

1. All *rule references are to* Missouri Rules of Civil Procedure (1998), and all statutory refer-

ences are to RSMo 1994, unless otherwise indicated.

The trial court relied on *In Re Estate of Wray*, 842 S.W.2d 211 (Mo.App. E.D.1992), in reaching its conclusion that Husband was entitled to have the estate pay one-half of the loans. *Wray* involved a claim by a widow against her husband's estate, by which she sought reimbursement for payments on notes and a credit card debt. The trial court allowed the claim, but was reversed by the appellate court. The appellate court noted § 473.290.[2] It also noted that the decedent and his widow were jointly and severally liable on the debts, that the property securing the indebtedness became the widow's property after decedent's death, and that the property was not subject to administration in his estate. The court held that "one who is jointly and severally liable is not permitted under § 473.290 to assert a claim for the indebtedness against the decedent's estate." *Id.* at 214. It also held, however, that a joint and several obligor who pays an indebtedness is entitled to contribution from other co-makers and ordinarily would be entitled to contribution for one-half of the payment made on the note. *Id.* The court concluded that the widow received the property securing the indebtedness, and that she was entitled to contribution "for one-half of any amount by which her payments on the notes exceeded the fair market value of the tenancy by entirety property received by [her] and given as security for the indebtedness." *Id.*

On this appeal, Collin contends that the trial court misapplied *Wray*, and that the estate should not be responsible for any of the notes because the security, which became Husband's property, had a value greater than the balance owing on the notes. Husband, on the other hand, contends that the trial court reached a correct result. He argues that Loan No. 1 was secured by his life insurance policy, which was wholly owned by him; that the loan proceeds were shared by he and Decedent; and that while $5,000 to $5,500 of the proceeds went to improve the building in which he and Decedent operated their business, the building was owned by Collin. Because of these considerations, he argues that the fair market value of the security for Loan No. 1 is unrelated to the debt. He also argues that there was no evidence that any of the inventory purchased with the loan's proceeds remained at Decedent's death. With regard to Loan No. 2, he argues that it was unsecured, and that there was no evidence that he retained any asset purchased with its proceeds.

■ The result in *Wray* was reached by applying principles of contribution and recognizing that, except to the extent that the surviving joint obligor received the property securing the debt, there should be contribution for one-half of the obligation from the deceased maker. 842 S.W.2d at 214. The doctrine of contribution is based on principles of equity and natural justice, not contract. *Tindall v. Holder*, 892 S.W.2d 314, 323–24 (Mo.App. S.D.1994). It is applied when one is compelled to pay more than his share of a common obligation. *Id.* at 324.

■ In the instant case, Loan No. 2 was unsecured, and thus Husband did not receive any property securing that loan upon Decedent's death. As to that debt, Husband was properly required to reimburse the estate for one-half of its balance, to wit: one-half of the $1,585.89 paid by the estate. *In Re Estate of Wray*, 842 S.W.2d at 214. The trial court did not err with regard to its judgment with reference to Loan No. 2.

---

2. Section 473.290 provides, in pertinent part:
 When any indebtedness of a decedent is secured by mortgage, pledge or other lien on property which is owned by another or which, on the death of decedent, becomes the exclusive property of another, but is not subject to administration, the indebtedness shall be allowed and paid as other claims against the estate of the decedent unless it appears to the court that (1) the mortgage, pledge or lien was given to secure payment of the purchase price of the encumbered property or of an obligation incurred in connection with the improvement of the property, or (2) the decedent did not actually receive a substantial consideration in the transaction in which the indebtedness arose, or (3) the decedent had exclusive ownership and control of the property during his lifetime and it appears from the loan or mortgage agreement or circumstances surrounding the transaction giving rise to the mortgage, pledge or lien that decedent intended that the security should be exhausted in case of his death before any payment thereon is made from his estate. . . .

■ With regard to Loan No. 1, the trial court held that "Husband is entitled to have the estate pay only one half of [Loan No. 1]. Although this was a secured loan, the loan was not used to purchase the security." The security for Loan No. 1 was Husband's life insurance policy which he had obtained previously for a single premium payment. The evidence was that two months before Loan No. 2 was made, Husband's policy had a cash surrender value of $11,240. Husband's asset, therefore, was given as security for the loan, and the proceeds were presumably used for the mutual benefit of he and Decedent. In our view, Husband should not be required to pay the entire balance of Loan No. 1 ($10,-978.37) simply because he obtained the release of his paid up insurance policy which had a value greater than the loan's balance. Likewise, however, it would be inequitable for Decedent's estate to be responsible for the entire loan balance because Husband apparently received the benefits of the loan proceeds along with Decedent. Therefore, we conclude that Decedent's estate and Husband should each be responsible for one-half of the loan balance, and thus the trial court did not err in reaching this same conclusion.

We acknowledge Collin's argument that Loans No. 1 and 2 were both used, at least partially, to purchase inventory for the business, and that Husband became the sole owner of those assets upon Decedent's death.[3] The only evidence to which we are cited in the record about the value of the inventory of the business at Decedent's death is Husband's testimony that it was worth "somewhere between 12,000 and 18,000 [sic], probably." He said, however, that it was a "guess." The trial court made no specific findings about the value of the inventory in its judgment, but it did refer to Husband's testimony in that regard. Collin argues that because the balance of Loans No. 1 and 2 was a total of $12,564.26 ($1,585.89 plus $10,-978.37), and the value of the inventory was between $12,000 and $18,000, Husband ob-

tained assets with a value ranging from $564.26 less than the total indebtedness to $5,435.74 more than the debt. He argues that it is, therefore, inequitable for Husband to acquire ownership of the inventory, to which he ascribes the values assigned by Husband ($12,000 to $18,000), while only being required to pay one-half of the debt ($6,282.08).

■ We are directed to no evidence indicating whether, or to what extent, the inventory remaining in the business at the time of Decedent's death was purchased with the proceeds of either Loan No. 1 or 2. Based on *Wray*, the balance of the unsecured loan (Loan No. 2) should be shared equally between Decedent's estate and Husband. With reference to Loan No. 1, not only is there a lack of evidence about the identity of any remaining assets purchased with its proceeds, but it is clear that the security for the loan was Husband's separate policy, previously paid for with other assets. Furthermore, Husband and Decedent apparently shared the benefits of that loan, as they did with reference to Loan No. 2. Accordingly, the balance should be paid by the estate and Husband equally. The trial court, therefore, did not err in so holding. Point I is denied.

■ Collin's second point on appeal relates to his claim for attorney's fees. He sought reimbursement of his attorney's fees, alleging that the estate would benefit if he succeeded in either his claim for an accounting or for the removal of Husband as personal representative. In denying this claim, the trial court held that, although the estate would benefit from the judgment it was entering, "no statutory authority is provided for the allowance of attorney's fees as prayed in the amended petition."[4] Collin argues, however, that statutory authority is not necessary inasmuch as the trial court "has equity jurisdiction to make such an award."

---

3. According to Husband's testimony, the proceeds of Loan No. 2 were used "to buy inventory and operating expenses, travel expenses, you know, whatever kind of business expense we needed it for." As to Loan No. 1, he testified that $5,000 to $5,500 of the $10,000 principal amount of the loan was used for repairs on the

building housing their business, which was owned by Collin, and the balance ($4,500 to $5,000) was used to buy inventory.

4. There was evidence that Collin incurred attorney's fees of $1500 in prosecuting his suit.

Collin relies primarily on *In re Estate of Gangloff,* 743 S.W.2d 498, 504 (Mo.App. E.D. 1987), in support of his argument that the trial court erroneously declared and applied the law in denying his request for attorney's fees due to a lack of statutory authority. *Gangloff* involved an action by a legatee of a decedent's estate seeking, among other things, the removal of the personal representative and an accounting. There, the trial court ordered the removal of the personal representative, ordered him to reimburse the estate for money determined to have been wrongfully expended, and entered an award for attorney's fees in favor of the successful petitioner. In affirming the award of attorney's fees, the appellate court said:

It would be inequitable for the legatees to benefit from petitioner's efforts to increase the fund due them without contributing to his expenses. Whether the attorney's fees are required by statute or equity, his services benefit the entire estate and there is no reason to deny them because the petitioner is also an attorney. [citations omitted].

*Id.* at 504.

In *In re Estate of Murray,* 682 S.W.2d 857 (Mo.App. W.D.1984), the appellate court affirmed an order of the trial court awarding attorney's fees and expenses incurred by an heir of the estate in successfully prosecuting an action to remove the personal representative of the estate who had kept the estate open for 26 years, ran a farming business for the estate without court approval and without filing settlements, and had dissipated or lost some of the estate's assets. In doing so, the court noted that Article V, § 27.3 and .4(a) of the Missouri Constitution grants associate circuit judges the power to exercise probate jurisdiction, and "in connection therewith, [they] possess general equitable powers." *Id.* at 858. The court acknowledged the general rule that attorney's fees are recoverable only when authorized by statute or contract, when a court of equity finds it necessary in order to balance benefits, or when they are incurred because of involvement in collateral litigation. *Id.* The court said:

While there is scant authority, Missouri seems to follow the rule that expenses incurred by a beneficiary of an estate, rather than the personal representative, must be shown to be beneficial to the estate as a whole rather than to just individuals interested therein. . . . As to this specific situation, where a beneficiary of an estate is seeking an allowance for attorney fees from the estate based upon an action for an accounting from and removal of a personal representative, there should exist the requirement that not only must the action have been successful, but that the result is beneficial to the estate.

*Id.* at 858–59. *See also In re Estate of Morton,* 822 S.W.2d 456, 459 (Mo.App. E.D. 1991) (affirming the denial of a request for reimbursement of attorney's fees where the expenses were incurred for the benefit of the claimant rather than the estate, but acknowledging that such a recovery may be made where the activity is beneficial to the estate as a whole and not just to an individual's interest); and *In re Estate of Chrisman,* 723 S.W.2d 484, 486–87 (Mo.App. E.D.1986) (where the trial court, in denying a claim for attorney's fees, questioned its authority to grant them although there had been substantial benefit to the estate; and the appellate court reversed and awarded fees, noting that the trial court was exercising probate jurisdiction and in connection therewith, possessed general equitable powers).

In this case, the trial court acknowledged that the estate was benefiting from Collin's action, but denied his request for attorney's fees because of the lack of statutory authority. Pursuant to the authorities referred to above, however, the denial of such fees on this basis alone was an erroneous declaration of the law. There is no question that the estate benefitted generally from the entry of the judgment against Husband. We do not view the fact that Collin was not successful in his action to remove Husband as personal representative as being solely determinative of his request for reimbursement of attorney's fees. The fact that the trial court did not order Husband removed as personal representative does not detract from the benefit realized by the estate as a result of the judgment against Husband for contribution

on the note payments. We, therefore, hold that Collin is entitled to an award of attorney's fees.

Although there is no issue about the reasonableness of the attorney's fees sought by Collin, we are unable to conclude from the record the amount incurred in pursuit of the claim for an accounting versus the request to remove Husband as the personal representative. There were also other issues determined by the trial court, such as the identification of property as exempt, joint, or an asset of the estate which may have affected the amount incurred by Collin as attorney's fees. Accordingly, the issue of attorney's fees must be remanded to the trial court for a determination of the amount thereof attributable to the accounting action filed by Collin, and for the entry of a judgment against the estate in the amount of such fees found to have been incurred in connection with that claim.

■■■ In his third and final point on appeal, Collin contends that the trial court erred in determining that certain items of personal property constituted the exempt property of Husband; that certain property should be in the estate; and that certain property was jointly owned by Husband and Decedent. Instead, he argues that certain property was being held in trust for him and his brother by Decedent, and some was owned by Decedent prior to her marriage and could not constitute entireties property. Collin characterizes his complaint as being that, despite evidence to the contrary, "The trial court nevertheless found that virtually all of the property was either an estate asset, which it then classified as either exempt property or property subject to estate administration, or joint property of which Husband became the sole owner when Decedent died." He asserts that the issue here is who owned what property.

Collin's paternal grandfather, David Brannan, Sr., died in 1981, leaving his entire estate to Collin, who was then 17 years old, and his brother. Under his will, the entire bequest was placed in trust, with Decedent as trustee, until Collin became 21, at which time the entire estate was to be divided between him and his brother. The inventory filed in the paternal grandfather's estate included "miscellaneous personal jewelry," and "miscellaneous furniture," valued at a total of $2,850. According to Collin, Decedent took possession of that property and, except for a few items which he removed over the years, had it in her home when she and Husband were married in 1983, and when she died in 1994. Collin argues that the trial court erred in determining that some of this property constituted assets of the estate or was jointly owned by Husband and Decedent.

Collin also contends that some of the personal property in Decedent's home actually belonged to his maternal grandfather, Mr. Davis. Mr. Davis had moved from Texas and lived with Decedent while his home was being built. According to Collin, Mr. Davis left some of his property with Decedent when his home was completed because he didn't have room for everything.

Husband, as personal representative of Decedent's estate, did not initially include any household goods in the inventory of estate assets. He later filed an amended inventory in which he included the items which he said "were [Decedent's] when we were married." He did not include any items that they had purchased during the marriage, taking the position that they were entireties property and were not assets of the estate. The "household items" included in the amended inventory were shown as having a total value of $21,589.

Husband filed an application, as the surviving spouse, for exempt property pursuant to § 474.250.[5] The trial court awarded some of the property to Husband as exempt property, declared some of the items of property to be "joint property now owned solely by Hus-

5. Section 474.250 provides, in pertinent part:
 The surviving spouse ... [is] entitled absolutely to the following property of the estate without regard to its value: The family bible and other books, one automobile or other passenger motor vehicle with its means of propulsion, all wearing apparel of the family, all household electrical appliances, all household musical and other amusement instruments and all household and kitchen furniture, appliances, utensils and implements....

band by right of survivorship," determined that some of the property was estate property which should be included in the estate inventory, and decided that some was the separate property of Collin.

The trial court found:

For most items in dispute, there was little or no corroborating evidence as to ownership, such as an inventory of assets from the testamentary trust of [ the paternal grandfather]. The Perry [sic] children apparently believe that personal property that they grew up with or may have treated as their own belongs to them, when in fact, legal ownership to the property presumably remains with the purchaser of the property, often their parent(s), absent proof of gift. Where the proof of a particular item is insufficient to show otherwise, it has been included in the estate, which will have the effect of providing interested parties an opportunity to obtain the property before, or upon the final settlement and distribution.

Collin contends, however, that the evidence did not support the trial court's judgment. He argues that Husband testified that the amended inventory did not include any items purchased during the marriage. Contrary to the court's finding, therefore, Collin argues that none of the items on that list could have been entireties property which passed automatically to Husband on Decedent's death. He argues that the court engaged in "guesswork" by including items in the estate "[w]here the proof for a particular item is insufficient to show otherwise." Additionally, he contends that, with reference to many of the items identified by Collin as belonging to him or his brother, Husband testified that he had no positive information to the contrary. Finally, he points out that Husband testified that he knew nothing specific about the items which Collin identified as belonging to his maternal grandfather. Thus, he concludes that the court, in its judgment, ignored the evidence, and entered a judgment that was against the weight of the evidence.

In response, Husband points out that Collin's testimony about who owned what property was uncorroborated. He also points out that no itemized list of assets of the paternal grandfather's estate was offered in evidence, and that if any of the property listed in the amended inventory had been the subject of a trust for Collin, that trust, by its terms, would have terminated in 1985 when he reached 21, yet Collin and his brother had not taken possession of the property. He also points out that there was no evidence that the trust was, in fact, ever funded by a distribution from the grandfather's estate. Finally, Husband points out that by the contents of the judgment, it is apparent that the trial court did not find much of Collin's testimony pertaining to such property to be credible. In support, he points out several inconsistencies which we need not review in detail here.

 An appellate court defers to the trial court's determinations of credibility, viewing the evidence and permissible inferences therefrom in the light most favorable to the decree and disregarding all contrary evidence and inferences. *Mehra v. Mehra*, 819 S.W.2d 351, 353 (Mo. banc 1991). The trial court is free to believe none, part, or all of the testimony of any witness. *Herbert v. Harl*, 757 S.W.2d 585, 587 (Mo. banc 1988). Based upon our review of the record, we find that there was substantial evidence from which the trial court, as the trier of fact, could have reasonably concluded as it did with reference to the personal property, with the exception of the items that it held were jointly owned between Decedent and Husband.

Husband concedes that the trial court was in error in its designation of most of the items of property which it found to be entireties property. He agrees that most of these items should be assets of the estate. It will be remembered that on the amended inventory, Husband had listed all of these as property belonging to Decedent when they were married. He lists three exceptions to this concession, contending that 60% of "[m]iscellaneous dishes, etc. for resale" valued at $30, 20% of "[m]iscellaneous Christmas decorations" valued at $4, and 80% of "[c]hina, 68 pieces Venon Ware" valued at $400 should be considered as belonging to the estate, and the remaining percentage as constituting jointly owned property. Husband's only ref-

erence to the record on appeal in support of his argument that a percentage of these items should be considered as having been jointly owned relates to the "[c]hina, 68 pieces Venon Ware" and his testimony that 20% of it was acquired during the marriage.

We are directed to no evidence from which it could be concluded that ownership of the property listed on the amended inventory changed after the marriage, other than Husband's testimony with reference to 20% of the "[c]hina, 68 pieces Venon Ware." Accordingly, we are not directed to any substantial evidence from which the trial court could have concluded that any of that property, other than the 20% interest in the china, was jointly owned at the time of Decedent's death and, therefore, passed to Husband. Yet the trial court held that several other items of property were jointly owned.

We affirm the trial court's judgment relating to the designation of items of personal property as "exempt," items that constitute property that should be included in the inventory of the estate, and items that were "separate" (property individually owned and not to be included in the estate). We reverse the portion of the judgment declaring that personal property (except the 20% interest in the "[c]hina, 68 pieces Venon Ware") was "JT" ("joint property now owned solely by Husband by right of survivorship"). Because we are remanding the case to the trial court with reference to attorney's fees, we will also remand the issue of whether the property previously declared by the trial court as constituting "joint property" (including the 80% interest in the "[c]hina, 68 pieces Venon Ware," but excluding the 20% interest thereon) should be declared to be the separate property of others, or an asset of the estate, and if so, whether it is exempt property.

The judgment is affirmed except as to the issue of attorney's fees, and the appropriate classification of the items of personal property previously declared to be "joint property" (other than the 20% interest in the china). With reference to those issues, the case is reversed and remanded to the trial court for further proceedings consistent with this opinion.

PREWITT, J., and CROW, J., concur.