PRESENT: All the Justices

ANDREA GAIL JONES

v. Record No. 190643

TERRY M. PHILLIPS, ET AL.

OPINION BY
JUSTICE D. ARTHUR KELSEY
DECEMBER 3, 2020

FROM THE CIRCUIT COURT OF POWHATAN COUNTY
Paul W. Cella, Judge

In this appeal, we address two questions of first impression in Virginia. The first is whether an insurer's payments on a fire insurance policy were immune from garnishment as "proceeds of the sale or disposition" of property held in trust under former Code § 55-20.2(C), recently recodified as Code § 55.1-136(C).[1] The second is whether the contractual right under the insurance policy to receive fire-loss payments was intangible personal property held by the named insured and his wife as a tenancy by the entirety. Reversing the circuit court, we answer both questions in the negative.

I.

Terry and Cathy Phillips owned their marital residence as tenants by the entirety until 2010 when they retitled the property in the names of separate, revocable trusts as tenants in common. Cathy Phillips's trust owns a 99% undivided interest in the property, and Terry Phillips's trust owns a 1% undivided interest. In February 2018, the residence was severely damaged by a fire. The residence was covered by an insurance policy issued by Chubb & Son, Inc. ("Chubb"), which named "Terry M. Phillips" as the policyholder. *See* J.A. at 20-95. Cathy Phillips was not specifically named in the policy. One provision in the policy defined "[y]ou" to

_____

[1] In October 2019, Code § 55-20.2 was amended, renumbered, and recodified as Code § 55.1-136, which contains near-identical language as former Code § 55-20.2. *See* 2019 Acts ch. 712, at 1339. We refer throughout this opinion to the current codification of statutes and have noted any technical changes in the statutes when relevant.

include Terry Phillips and any "spouse who lives with [him]," *id.* at 40, and another provision stated that "[i]n case of death" Chubb would "cover your spouse, your legal representative or any person having proper temporary custody of your property until a legal representative is appointed and qualified," and "any member of your household who is a covered person at the time of death." *Id.* at 83.

Seeking satisfaction of a civil judgment that she had obtained against Terry Phillips, Andrea Jones filed this action to garnish insurance payments from Chubb arising out of the fire damage to the home owned by the reciprocal trusts. Terry and Cathy Phillips filed a motion to quash the garnishment, arguing that the insurance payments were immune from garnishment under Code § 55.1-136(C). That statute protects "proceeds of the sale or disposition" of property that was formerly held as a tenancy by the entirety and then conveyed to separate revocable or irrevocable trusts. *See* Code § 55.1-136(C). Terry and Cathy Phillips further argued that irrespective of any statutory immunity protecting the reciprocal trusts' ownership of the property subject to a "sale or disposition," *id.*, the contractual right to the insurance payments constituted intangible personal property owned by Terry and Cathy Phillips as tenants by the entirety, and thus, these payments could not be seized by a judgment creditor of only one of them.

Jones argued in response that the insurance payments were not statutorily immune from garnishment as "proceeds of the sale or disposition" of trust property under Code § 55.1-136(C) because no "sale" or "disposition" had ever occurred. Jones also contested the alternative argument by Terry and Cathy Phillips that they had acquired as tenants by the entirety the contractual right under the insurance policy to the fire-damage payments.[2]

---

[2] "[I]t is not uncommon for married couples," Jones observed, "to designate investment or other asset accounts as 'tenants by the entirety.'" J.A. at 140. "Here, however, there is not such [a] designation in the insurance contract between Mr. Phillips and Chubb." *Id.* Jones also

2

Accepting the primary argument by Terry and Cathy Phillips, the circuit court granted the motion to quash and dismissed the garnishment proceeding on the ground that Code § 55.1-136(C) protected the insurance payments from garnishment as "proceeds of the sale or disposition" of property owned by the reciprocal trusts. The court did not address the alternative argument asserted by Terry and Cathy Phillips.

## II.

On appeal, Jones argues that the circuit court erroneously held that Code § 55.1-136(C) immunized the insurance payments from garnishment on the ground that they were "proceeds of the sale or disposition" of the property held in trust. For the following reasons, we agree.

## A.

"In Virginia, garnishment is regarded . . . as an independent suit by the judgment-debtor in the name of the judgment-creditor against the garnishee." *Butler v. Butler*, 219 Va. 164, 165-66 (1978); *see also Levine's Loan Off. v. Starke*, 140 Va. 712, 714 (1924) ("Garnishment is a statutory proceeding to enforce the lien of a writ of fieri facias on a liability of any other person than the judgment debtor . . . ."). Garnishment is "substantially an action at law." *Lynch v. Johnson*, 196 Va. 516, 521 (1954). While "[o]rdinarily, the only adjudicable issue is whether the garnishee is liable to the judgment-debtor, and if so, the amount due," an additional issue may be whether the garnishee has immunity from garnishment. *See Butler*, 219 Va. at 166.

Absent an applicable common-law or statutory exemption, *see, e.g.*, Code §§ 8.01-512.4 and 38.2-3339, insurance payments are not exempt from garnishment. "An insurance contract to cover risks like liability or fire insurance builds no cash value and is payable only upon the happening of the named contingency. If the insurance company's obligation to distribute the

asserted that Cathy Phillips was not a "named insured," and the insurance policy covered "many relatives, spouses among them, as covered or insured individuals." *See id.* at 138.

3

proceeds becomes fixed and definite, then the company could be summoned as garnishee prior to payment to the insured." Doug Rendleman, Enforcement of Judgments and Liens in Virginia § 4.8[B], at 4-51 (3d ed. 2014); *see also* Kent Sinclair & Leigh B. Middleditch, Jr., Virginia Civil Procedure § 15.7[C], at 1265 (6th ed. 2014) (observing that "insurance proceeds[] may be garnished").

## B.

Under the common law, "where a tenancy by the entirety in the fee simple is once created the property is completely immune from the claims of creditors against either husband or wife alone." *Vasilion v. Vasilion*, 192 Va. 735, 740 (1951). In 2000, the General Assembly "broke new ground" by authorizing "a husband and wife to convey certain tenancy by the entirety real estate to 'their joint revocable or irrevocable trust, or in equal shares to their separate revocable or irrevocable trusts' without losing its tenancy by the entirety status." J. Rodney Johnson, *Wills, Trusts, and Estates*, 34 U. Rich. L. Rev. 1069, 1076 (2000) (quoting Code § 55-20.1 (2000)).[3]

Recently recodified as Code § 55.1-136(C), the statute extends that immunity to "any proceeds of the sale or disposition" of tenancy-by-the-entirety property conveyed to trusts, thus granting those proceeds immunity *as if they were* tenancy-by-the-entirety property. In this case, the parties concede that the residence was not sold. The only remaining question is whether the insurance payments were *proceeds* of a *disposition* of the residence.

In the vocabulary of law, a "disposition" is defined as "[t]he act of *transferring* something to another's care or possession" or "the relinquishing of property," Black's Law

---

[3] This provision was originally codified in 2000 as Code § 55-20.1, but it was amended and moved to Code § 55-20.2 in 2001. *See* 2001 Acts ch. 718, at 968-69. In 2019, former Code § 55-20.2 was recodified as Code § 55.1-136. *See supra* note 1.

Dictionary 592 (11th ed. 2019) (emphasis added),[4] and the "[a]ct of disposing; *transferring* to the care or possession of another" or "[t]he parting with, alienation of, or giving up property," Black's Law Dictionary 471 (6th ed. 1990) (emphasis added).[5] By including "disposition" in Code § 55.1-136(C), the legislature expanded the immunity from creditors to all forms of *transferring* property outside the context of a voluntary sale. Such dispositions could include foreclosures, judicial sales, condemnations, and any other voluntary or involuntary transfers of property.

Virginia law has never considered an insurance payment for property loss to be an implied transfer of anything to the insurer. As we have said in other contexts, an insurance policy is a "personal contract" that "inures to the benefit of the party with whom it is made, and indemnifies him against loss; and . . . the amount paid by the company 'is in no proper or just sense the *proceeds* of the property.'" *Thompson v. Gearheart*, 137 Va. 427, 434 (1923) (emphasis added) (citation omitted); *see also Lynch*, 196 Va. at 522; *Clements v. Clements*, 167 Va. 223, 233 (1936). We see no reason to take a different conceptual course in this case.

That said, we acknowledge that "disposition" is sometimes used in another sense — to describe a person's "temperament or character" or "personal makeup," Black's Law Dictionary 593 (11th ed. 2019). For example, one might say that an emotionally damaged man has a hot-headed disposition. But we would hardly say that a fire-damaged house has a smoldering disposition or, for that matter, any "disposition" at all. A house, in common vernacular, does not

---

[4] *See also* Black's Law Dictionary 572 (10th ed. 2014); Black's Law Dictionary 539 (9th ed. 2009); Black's Law Dictionary 505 (8th ed. 2004); Black's Law Dictionary 484 (7th ed. 1999).

[5] *See also* Black's Law Dictionary 423 (5th ed. 1979); Black's Law Dictionary 558 (rev. 4th ed. 1968).

have a good or a bad disposition. Such an anthropomorphic understanding of "disposition" cannot be fairly attributed to the carefully worded text of Code § 55.1-136(C).

Employing the established legal meaning of "disposition," we conclude that the garnishment immunity provided by Code § 55.1-136(C) does not apply to Chubb's insurance payments. The reciprocal trusts, as property owners, did not sell or otherwise dispose of the property. Chubb did not acquire any ownership interest (or any legal or equitable interest at all) in the fire-damaged house. No *disposition* of the house — according to the word's most common legal usage — ever occurred because the fire was not an "act of transferring" the property to the insurer or to anyone else. *See* Black's Law Dictionary 592 (11th ed. 2019).

C.

Our dissenting colleagues offer several procedural and substantive rejoinders that warrant a brief response.

1.

The dissent's procedural objections begin with the contention that Jones does not argue the transfer definition that we embrace. *See post* at 29. We disagree. On appeal, Jones contends that "insurance proceeds are not a disposition under § 55-20.2" because "the property has been neither sold, nor devised, nor given away." *See* Appellant's Br. at 22 (altering capitalization). These are all actions that involve a property transfer of some kind. Jones adds, "No disposition occurred in the instant case; the Phillips[es] retain all the sticks in the [p]roperty's bundle." *Id.* at 22. Her reference to "sticks in the property's bundle," of course, refers to individual property rights. *See United States v. Craft*, 535 U.S. 274, 278 (2002) (noting that "bundle of sticks" is a "common idiom describ[ing] property" and refers to "a collection of individual rights"); *Cygnus Newport-Phase 1B, LLC v. City of Portsmouth*, 292 Va. 573, 586 (2016) (referring to the "property rights 'bundle of sticks'" and stating that "no stick was taken out of that bundle").

6

Equally clear, her reference to the Phillipses "retain[ing] all the sticks," Appellant's Br. at 22, refers to the fact that Terry and Cathy Phillips did not transfer any of their property rights. There is no basis, therefore, for the dissent's view that Jones waived the argument that the proper definition of "disposition" under Code § 55.1-136(C) involves some form of property transfer.

The dissent also contends that Jones "implicitly asserts" on brief "that the meaning of disposition" is ambiguous. *See post* at 33. There is no such implication. Read most fairly, Jones's argument, *see* Appellant's Br. at 16-18, suggests only that Code § 55.1-136 was an *explicit* legislative response to an *ambiguous* public policy issue concerning how far, if at all, to extend the reach of tenancy-by-the-entirety protections. Conspicuously absent from the explicit statutory language, Jones points out, is any reference to the highly ambiguous question whether those protections should apply to insurance proceeds. Counsel for Jones made the same assertion in oral argument. *See* Oral Argument Audio at 2:05 to 2:18 ("As it properly did in the *Pitts* decision, this Court should defer this question to the legislature to weigh the competing public policy issues connected therewith and pass the law best suited to address those different interests."). We thus do not interpret Jones's discussion of caselaw as a waiver of her arguments that the legislature did not intend to protect insurance payments under Code § 55.1-136, as evidenced "through the words used," *see* Oral Argument Audio at 13:54 to 14:09, and that the term "disposition" requires some type of transfer of "the sticks in the [p]roperty's bundle," *see* Appellant's Br. at 22.

2.

Turning to the merits of this dispute, the dissent rejects the act-of-transferring definition as overly simplistic, *see post* at 28 (noting that things should be "as simple as possible, but not simpler"), and criticizes our focus on the "vocabulary of law," *see post* at 31-33, 40-41. Apparently backing the analysis down from "simpler" to merely "simple" and then expanding

7

the linguistic search beyond the vocabulary of law, the dissent contends that the house fire constituted a "disposition" defined as a "final settlement or determination." *See post* at 31-32, 39. This particular usage of "disposition," however, has a specific denotation unique to legal terms, such as a "court's disposition of the case," a judicial "judgment or sentence," or a "termination of a case." *See* Black's Law Dictionary 592 (11th ed. 2019). This meaning of the term can be found in dozens of Virginia statutes. Decisionmakers, most notably courts,[6] make these kinds of "dispositions." Burnt houses do not.

What the dissent appears to be saying is that the insurer *settled* an insurance claim after *determining* that coverage existed and thus made a "final settlement or determination" — ergo, a disposition. *See post* at 39. That interpretation, however, alters the syntax of Code § 55.1-136(C), which refers to a "disposition *of* such property," not a coverage disposition of an insurance company. The insurer did not dispose "of such" fire-damaged house. Nor did anyone else.

3.

In a single sentence, the dissent suggests that it is "worth considering" that an early edition of Black's Law Dictionary included "destruction of property" as an alternative definition of "disposition." *See post* at 32. That enticing understatement, however, relies upon the 4th edition of Black's Law Dictionary published in 1957. After repeating the traditional act-of-transferring definition, the 4th edition added "destruction of property" as an alternative definition. *See* Black's Law Dictionary 558 (rev. 4th ed. 1968). The only basis identified in Black's Law Dictionary for this alternative definition, however, was *Pioneer Cooperage Co. v. Commissioner*, 53 F.2d 43 (8th Cir. 1931), a tax case addressing whether insect damage to

---

[6] *See, e.g.*, Code §§ 16.1-69.58, 16.1-305.1, 17.1-403, 19.2-303.6, and 19.2-360.

8

timber qualified for a tax deduction. No court since 1931 has cited *Pioneer Cooperage Co.* as an exemplar use of the term "disposition," and it must be observed that few legal jurists or scholars find the Byzantine use of English words in the Internal Revenue Code to be a reliable guide for discovering their plain and ordinary meaning outside of that unique context.

The dissent's implicit reliance upon *Pioneer Cooperage Co.*, *see post* at 32 (quoting the 4th edition of Black's Law Dictionary with the citation to *Pioneer Cooperage Co.* omitted), suffers from a more serious weakness. The editors of the 5th, 6th, 7th, 8th, 9th, 10th, and 11th editions of Black's Law Dictionary removed the alternative definition of "destruction of property" that had been included in the 4th edition. The fairest inference from this conspicuous retraction is that for 40 years, linguistic experts entrusted with the most widely read legal dictionary in American law have considered the traditional act-of-transferring definition to be the plain meaning of disposition and the destruction-of-property definition to be a curious, narrow, or strained meaning of that word. If so, we agree with them.

4.

The dissent places a guarded emphasis on our decision in *Pitts v. United States*, 242 Va. 254 (1991), in support of its interpretation of disposition in Code § 55.1-136(C). *See post* at 35-38. *Pitts*, however, did not attempt to define disposition. Nor did *Pitts* mention Code § 55.1-136(C), which had not yet been enacted. A single sentence in *Pitts* merely notes that "some courts" outside of Virginia have applied tenancy-by-the-entirety protection to various circumstances, including "payments of insurance claims," *Pitts*, 242 Va. at 262. *Pitts* cites none of these foreign cases. The only citation is to an American Law Reports annotation. *See id.* (citing Michael A. DiSabatino, Annotation, *Proceeds or Derivatives of Real Property Held by Entirety as Themselves Held by Entirety*, 22 A.L.R. 4th 459 (1983)). That annotation includes "some" cases going one way on the subject and "some" cases going the other way. *Compare*

9

DiSabatino, *supra*, § 14[a], at 518 ("§ 14[a] Insurance payments for injury to realty — Held to be owned by entirety"), *with id.* § 14[b], at 519 ("§ 14[b] Insurance payments for injury to realty — Held not to be owned by entirety").[7]

The very next sentence in *Pitts*, moreover, expressly disclaims the some-courts dictum: "We confine the reach of our decision to our answer to the question as certified, based upon the facts detailed in the order of certification," *Pitts*, 242 Va. at 262. The import of this statement is unmistakable. The precedential "reach of our decision" in *Pitts* does not extend to any issue other than the specific "answer to the question" posed by the federal court's certification order in that case and does not attempt to resolve future cases involving facts not "detailed" in that certification order. *See id.*

*Pitts* addressed what happens to a married couple's real property held as a tenancy by the entirety when they sell it to someone else. Under Virginia law, *Pitts* held, the answer was easy: Whatever the buyer gives the married couple in return for the *transfer* of such property (whether cash, a check, or a promissory note) retains its character as property held as a tenancy by the entirety. *See id.* at 261-62. This holding deserves the protection of stare decisis. "[W]hen a court of last resort has established a precedent, *after full deliberation upon the issue* by the court,

---

[7] None of the out-of-state cases cited by the dissent address a statutory "sale or disposition" provision similar to Code § 55.1-136(C). Nor do any of these courts mention, much less hold, that a "disposition" of property (the sole issue before us on this point) includes insurance payments. *See post* at 38 (citing *Cooper v. Cooper*, 284 S.W.2d 617, 620 (Ark. 1955) (applying a common law rule in Arkansas applicable to "derivatives of real property"); *Regnante v. Baldassare*, 448 N.E.2d 775, 777-78 (Mass. App. Ct. 1983) (applying a common law rule in Massachusetts to proceeds arising from a "destruction" of property); *Gaunt v. Shelter Mut. Ins.*, 808 S.W.2d 401, 404-05 (Mo. Ct. App. 1991) (applying a common law rule in Missouri to proceeds arising out of "damage" to property)). The dissent also cites *McDivitt v. Pymatuning Mutual Fire Insurance*, 449 A.2d 612, 615-16 (Pa. Super. Ct. 1982), but that case undermines the dissent's position by holding that "the fact that the property owned by the [married couple] was held by the entireties [is] of no real significance to the resolution of the issue whether [one spouse] may be entitled to one-half of the proceeds from the fire insurance, payable as a result of the destruction of the entireties' property."

10

the precedent will not be treated lightly or ignored, in the absence of flagrant error or mistake." *Selected Risks Ins. v. Dean*, 233 Va. 260, 265 (1987) (emphasis added). The some-courts dictum, however, is just that — a mere dictum undeserving of any stare decisis weight.

The dissent seeks to reinforce its use of the *Pitts* some-courts dictum by suggesting that the General Assembly, by enacting the predecessor to Code § 55.1-136(C), "perhaps" codified the dictum by "accepting this Court's invitation to do so." *See post* at 36. After all, we presume that the legislature is "aware of this Court's precedents" and writes laws "with knowledge of our previous decisions in this area of the law." *See post* at 38 (citation omitted). By taking this view, the dissent seems to be applying the legislative-acquiescence doctrine without expressly mentioning it by name. If so, it is being misapplied.

The legislative-acquiescence doctrine presumes that unless a newly enacted statute suggests otherwise, the legislature intends the statute to be interpreted consistent with prior binding precedent addressing the point being codified. Even when properly applied, however, the presumption is weak. *See United States v. Wells*, 519 U.S. 482, 495-96 (1997) (commenting that "it is at best treacherous to find in congressional silence alone the adoption of a controlling rule of law" (alteration and citation omitted)). And the doctrine provides no presumption at all when improperly applied.

The legislative-acquiescence doctrine presumes acquiescence to judicial "precedents," *Lambert v. Sea Oats Condo. Ass'n*, 293 Va. 245, 254 (2017), not obiter dicta. As noted earlier, the some-courts dictum in *Pitts* is a single sentence citing an annotation that surveys the split of authority on the issue of insurance proceeds. That non-precedential remark is immediately followed by a disclaimer "confin[ing] the reach of [the *Pitts*] decision" to the specific question presented, which had nothing to do with insurance payments. *See Pitts*, 242 Va. at 262. Insisting that the legislature has silently agreed with the *Pitts* some-courts dictum and implicitly

11

codified it in Code § 55.1-136(C) "merely piles one interpretative inference upon another," *Loudoun Cnty. v. Richardson*, 298 Va. 528, ___, 841 S.E.2d 629, 641 (2020) (Kelsey, J., dissenting).

## III.

Offering an alternative argument in support of the circuit court's judgment, Terry and Cathy Phillips contend that the contractual right under the insurance policy to the fire-damage payments constitutes intangible personal property owned by them as tenants by the entirety. Thus, even if Code § 55.1-136(C) provides no statutory "disposition" immunity from creditors, the common-law doctrine of tenancy by the entirety (extended by statutes and caselaw to personal property) protects the insurance payments from garnishment by a judgment creditor of Terry Phillips. We disagree.

## A.

The common law has recognized the tenancy by the entirety for centuries. *See* 2 William Blackstone, Commentaries *182; 7 Michael Allan Wolf, Powell on Real Property § 52.01[1], at 52-3 (2020).[8] In a long line of cases, we have synthesized this estate's five essential characteristics and defined it as a property interest in which the co-owners hold (i) unity of title, (ii) unity of estate, (iii) unity of time, (iv) unity of possession, and (v) unity of marriage. *See Evans v. Evans*, 290 Va. 176, 183 (2015); *Rogers v. Rogers*, 257 Va. 323, 326 (1999); *Pitts*, 242 Va. at 258-59; *Gant v. Gant*, 237 Va. 588, 591 (1989); *Jones v. Conwell*, 227 Va. 176, 181 (1984). These unities reflect the unities of a joint tenancy "modified by the common law

---

[8] *See also* 2 James Kent, Commentaries on American Law 132 (2d ed. 1832); 1 John Tayloe Lomax, Digest of the Laws Respecting Real Property 616 (2d ed. 1855). *See generally* John V. Orth, *Tenancy by the Entirety: The Strange Career of the Common-Law Marital Estate*, 1997 BYU L. Rev. 35, 35-40 (1997).

principle that husband and wife are but one person." 1 Raleigh C. Minor & Frederick D.G. Ribble, The Law of Real Property § 852, at 1096 (2d ed. 1928); *see Jones*, 227 Va. at 181.

The "grand incident" of a joint tenancy, which is also shared by a tenancy by the entirety, is the right of survivorship. *See* 1 Minor & Ribble, *supra*, §§ 847, 855, at 1092, 1099. In the context of a tenancy by the entirety, the right of survivorship means that "[u]pon the death of either spouse, the whole of the estate by the entireties remains in the survivor." *Vasilion*, 192 Va. at 740. The common law presumed that a conveyance to more than one grantee created a joint tenancy, except for conveyances to a husband and wife, which created a tenancy by the entirety if all of the required unities were present. *See id.* at 739; *American Nat'l Bank of Wash., D.C. v. Taylor*, 112 Va. 1, 4 (1911); American Law of Property § 6.6, at 24 (A. James Casner ed., 1952); 7 Wolf, *supra*, § 52.01[2], at 52-3; *see also* Charles Alfred Graves, Notes on the Law of Real Property § 145, at 176 (1912); 4 Kent, *supra* note 8, at 361; Paul H. Melnick, *Forms of Holding Title*, *in* 2 Real Estate Transactions in Virginia §§ 8.202, 8.3, at 1066, 1070 (Neil S. Kessler & Paul H. Melnick eds., 5th ed. 2019); 1 Minor & Ribble, *supra*, § 838, at 1085-86. Most scholars agree that the early common law required little, if any, express manifestation of intent to create a tenancy by the entirety with the right of survivorship when the five unities were present.[9]

---

[9] *See* Joseph L. Lyle, Jr., *Virginia Extends Entireties Doctrine*, 20 Wash. & Lee L. Rev. 260, 261-62 (1963) ("Thus it developed [at common law] that virtually any estate created between husband and wife, where the four unities were present, resulted in a tenancy by the entirety."); Robert A. Ryland, *Tenancy by the Entirety in Virginia*, 24 Va. L. Rev. 689, 689 (1938) ("At common law no expressed intention in a deed or will was necessary to create either joint tenancy or tenancy by the entirety."); Emerson G. Spies, *Some Considerations in Conveying to Husband and Wife*, 34 Va. L. Rev. 480, 482 (1948) ("At common law joint tenancies were most favored by the courts and arose presumptively whenever the grantees were not husband and wife and the four unities of time, title, interest, and possession were present . . . .").

A long series of legislative enactments, however, have superseded the common law presumption favoring the right of survivorship. "[B]y statute enacted as early as 1787, survivorship between joint tenants was abolished." *Vasilion*, 192 Va. at 741 (citation omitted); *see Pitts*, 242 Va. at 259; *Allen v. Parkey*, 154 Va. 739, 744-45 (1929), *adhered to on reh'g*, 154 Va. 739 (1930).[10] This statute, however, did not "abolish survivorship between tenants by the entirety," *Vasilion*, 192 Va. At 741 (citation omitted), because a tenancy by the entirety "is conceptually different from a joint tenancy," Melnick, *supra*, § 8.3, at 1070. In a tenancy by the entirety, the husband and wife own "a *sole*, and not a *joint*-tenancy. They have no *moieties*. Each holds the *entirety*. They are *one* in law, and their estate *one and indivisible*." *Thornton v. Thornton*, 24 Va. (3 Rand.) 179, 183 (1825) (emphases in original). A "moiety" in common law is a separate interest. *See* Black's Law Dictionary 1024 (11th ed. 2019). The defining feature of a tenancy by the entirety was that, as between husband and wife, there were no moieties. *See Thornton*, 24 Va. at 183-87.[11]

In the mid to late 1800s, the General Assembly enacted several statutes specifically addressing tenancies by the entirety. *See Pitts*, 242 Va. at 259; *Vasilion*, 192 Va. at 741-42;

---

[10] With respect to joint tenancies, the abolition of survivorship was modified by a statutory exception allowing the right of survivorship when the intent to create it was explicitly stated. *See* Code 1849, ch. 116, § 19, at 502-03 (current version at Code § 55.1-134); *see also* 1 Minor & Ribble, *supra*, § 848, at 1093.

[11] *See also* 2 Blackstone, *supra*, at *182 ("[F]or husband and wife being considered as one person in law, they cannot take the estate by moieties, but both are seised of the entirety."); 2 Kent, *supra* note 8, at 132 ("If an estate in land be given to the husband and wife, or a joint purchase by them during coverture, they are not properly joint tenants, nor tenants in common, for they are but one person in law, and cannot take by moieties."); 1 Lomax, *supra* note 8, at 616 ("As there can be no moieties between husband and wife, they cannot be joint tenants; therefore, where an estate is conveyed to a man and his wife, and their heirs, it is not a joint tenancy; for joint tenants take by moieties, and are each seised of an undivided moiety of the whole.").

14

*Allen*, 154 Va. at 744-45; *American Nat'l Bank of Wash., D.C.*, 112 Va. at 4.[12]  The statutes

applied to conveyances to a husband and wife "as to *estates of inheritance* in 1850, and as to *all*

*estates, real or personal,* by the Code of 1887."  1 Minor & Ribble, *supra*, § 855, at 1100.[13]

These statutes reversed the common-law presumption that a husband and wife took property as

one person without separate moieties, as stated in the Code of 1887:  "[I]f hereafter any estate,

real or personal, be conveyed or devised to a husband and his wife, they shall take and hold the

same by moieties in like manner as if a distinct moiety had been given to each by a separate

conveyance," unless "it manifestly appears from the tenor of the instrument that it was intended

the part of the one dying should then belong to the other[]," *see* Code 1887, ch. 107, §§ 2430-

2431, at 593.

At this point in the statutory evolution of these concepts, "tenancy by entireties [was]

itself abolished, except where the deed or will manifests an intent that it shall continue."  *Allen*,

154 Va. at 745 (quoting Graves, *supra*, § 152, at 182).  "That is, after 1888 a tenancy by the

entirety could not be created in any estate [real or personal] unless survivorship was expressly

provided for in the instrument of transfer."  Ritchie, *supra* note 12, at 615.  The "practical effect

of the statute" was "to convert the tenancy *by entireties* into a tenancy *in common*, destroying

survivorship."  1 Minor & Ribble, *supra*, § 857, at 1102 (emphases in original); *see Allen*, 154

---

[12] *See also* Graves, *supra*, § 152, at 181-82; 1 Minor & Ribble, *supra*, § 855, at 1100; John Ritchie 3d, *Tenancies by the Entirety in Real Property with Particular Reference to the Law of Virginia*, 28 Va. L. Rev. 608, 613-14 (1942); Spies, *supra* note 9, at 485-86.

[13] *Compare* Code 1849, ch. 116, § 18, at 502 ("And if hereafter *an estate of inheritance* be conveyed or devised to a husband and his wife, one moiety of such estate shall, on the death of either, descend to his or her heirs, subject to debts, curtesy or dower, as the case may be." (emphasis added)), *with* Code 1887, ch. 107, § 2430, at 593 ("And if hereafter *any estate, real or personal,* be conveyed or devised to a husband and his wife, they shall take and hold the same by moieties in like manner as if a distinct moiety had been given to each by a separate conveyance." (emphasis added)).

Va. at 745. "In other words, [the statute] reversed the common law presumption that one transferring an estate by deed or will to a husband and wife intended them to be tenants by the entirety unless the language of the instrument clearly disclosed a contrary intent." Ritchie, *supra* note 12, at 615.

Later enactments have expanded, reorganized, and recodified these statutes. The statutory presumption against the right of survivorship, however, remains securely intact. At the time of the circuit court's judgment in this case, former Code §§ 55-20 to 55-21 addressed these issues. As noted earlier, *see supra* note 1, in 2019 the General Assembly amended, renumbered, and recodified these provisions as Code §§ 55.1-134, -135, and -136. *See* 2019 Acts ch. 712, at 1339. The changes were intended, in relevant part, to "improve the structure and clarity of statutes pertaining to real and personal property in the Commonwealth," *see* Virginia Code Commission, *Report on the Revision of Title 55 of the Code of Virginia*, S. Doc. No. 5, at v (2018). With respect to the provisions at issue in this case, the Virginia Code Commission made only "[t]echnical changes," *see id.* at 10-12, for the purpose of making the language "clear, consistent, and modern," *see id.* at x-xi. No substantive changes were intended. For the purpose of deciding the present case, therefore, we see no interpretative differences between the statutes as they exist today and as they existed at the time the circuit court decided this case.

Under Code § 55.1-135, a joint tenancy in real or personal property, including "any written memorial of a chose in action," is presumed to be *without* the right of survivorship unless "the expression 'with survivorship,' or any equivalent language, is employed in such titling." Unlike a tenancy by the entirety, however, a mere joint tenancy (even one with the right of survivorship) does not protect the jointly held property from the creditors of one of the co-owners. Any such separate interest can be attached, garnished, and partitioned. *See Jones*, 227 Va. at 181-82; 1 Minor & Ribble, *supra*, § 854, at 1097-98; *see also* Timothy H. Guare, *Mapping*

16

*the Plan*, *in* 1 Estate Planning in Virginia § 3.203, at 144 (Marie McKenney Tavernini ed., 5th ed. 2016); Melnick, *supra*, § 8.203, at 1069.

The language regarding conveyances to a husband and wife, originally enacted in the Code of 1887, is now found in Code § 55.1-135. The statutory presumption against the right of survivorship still applies to property that is conveyed jointly in the names of both spouses:

> If any real or personal property is conveyed or devised to spouses, they shall take and hold such property by moieties in the same manner as if a distinct moiety had been given to each spouse by a separate conveyance, unless language as provided in this section or in § 55.1-136 is used that designates the tenancy as a joint tenancy or a tenancy by the entirety and all requirements for holding property by such tenancy are met.

Code § 55.1-135.[14] The "language as provided . . . in § 55.1-136," *id.*, which is deemed sufficient to establish the right-of-survivorship prerequisite to a tenancy by the entirety, is stated

_____

[14] The Virginia Code Commission noted that this sentence was relocated to Code § 55.1-135 "because it is more logically located with other provisions regarding joint ownership." *See* Virginia Code Commission, *Report on the Revision of Title 55 of the Code of Virginia*, S. Doc. No. 5, at 11 (2018). Prior to its relocation in 2019, this provision was found in Code §§ 55-20 and -21. The first statute provided:

> When any joint tenant dies, before or after the vesting of the estate, whether the estate is real or personal, or whether partition could have been compelled or not, his part shall descend to his heirs, or pass by devise, or go to his personal representative, subject to debts or distribution, as if he had been a tenant in common. *And if hereafter any estate, real or personal, is conveyed or devised to a husband and his wife, they shall take and hold the same by moieties in like manner as if a distinct moiety had been given to each by a separate conveyance.*

Code § 55-20 (2018) (emphases added). The second statute provided:

> Section 55-20 [abolishing any presumption of survivorship] *shall not apply* to any estate which joint tenants have as fiduciaries, nor to any real or personal property transferred to persons in their own right *when it manifestly appears from the tenor of the instrument transferring such property or memorializing the existence of a chose in action, that it was intended the part of the one dying*

17

in Code § 55.1-136(A): "An intent that the part of the one dying should belong to the other shall be manifest from a designation of the spouses as 'tenants by the entireties' or 'tenants by the entirety.'"

When property is conveyed to spouses, therefore, Virginia law presumes *against* a tenancy by the entirety unless all required common-law unities exist, and the instrument uses (i) the language in Code § 55.1-136 designating the spouses as "tenants by the entireties" or "tenants by the entirety" or (ii) the language in Code § 55.1-135, expressly stating "the expression 'with survivorship,' or similar language" in the instrument. *See* Code § 55.1-135. No tenancy by the entirety can be created by an instrument that does not manifestly identify the property interest in this manner. *See Allen*, 154 Va. at 745 (stating, in explanation of the predecessor statute to Code § 55.1-136, that "tenancy by entireties is itself abolished, except where the deed or will manifests an intent that it shall continue" (quoting Graves, *supra*, § 152, at 182)).[15] *See generally* Nancy Newton Rogers, *Transferring Assets Outside of Probate*, *in* 2 Estate Planning in Virginia, *supra*, § 10.402, at 836 ("If no survivorship is specified, a tenancy in common results.").

The right of survivorship must be manifest because it dramatically changes the ordinary succession of property upon an owner's death. "Upon the death of either spouse *the whole of the estate* by the entireties remains in the survivor," and thus, "[t]he heirs of the deceased spouse inherit no part of the property so held. The entire estate remains exclusively in the surviving

---

*should then belong to the others.*
Code § 55-21 (2018) (emphases added).

[15] *See also* 9 Dale M. Cecka, Lawrence D. Diehl, & James R. Cottrell, Virginia Practice Series: Family Law § 4.3, at 96 (2020 ed.) ("When property is acquired by a husband and wife, a deed or other like instrument must specify that a tenancy by the entirety is intended, or otherwise a tenancy in common will be established . . . .").

18

spouse." *Vasilion*, 192 Va. at 740 (emphasis added); *see Johnson v. McCarty*, 202 Va. 49, 55-56 (1960); *Smith v. Smith*, 200 Va. 77, 81 (1958) (explaining that in a tenancy by the entirety, each spouse is "seized with the entire estate, and upon the death of one the survivor takes the whole"); Guare, *supra*, § 3.204, at 144; Melnick, *supra*, § 8.203, at 1068; 1 Minor & Ribble, *supra*, §§ 847, 854, at 1092, 1098.

A tenancy by the entirety also has an impact on each spouse's rights while both are alive. Unlike a mere joint tenancy with a right of survivorship, a tenancy by the entirety "may be severed only by mutual consent of the spouses or by divorce," *In re Bunker*, 312 F.3d 145, 151 (4th Cir. 2002). "Although husband and wife acting together may alienate or encumber the entireties property, 'neither spouse can convey [or encumber] any part of the property by his or her sole act.'" *Id.* (quoting *Hausman v. Hausman,* 233 Va. 1, 3 (1987)). And, most importantly for the purposes of our case, this unique form of co-ownership provides each spouse with protection against the judgment creditors of the other spouse. Under the common law, "property held as tenants by the entireties is exempt from the claims of creditors who do not have joint judgments against the husband and wife." *Rogers*, 257 Va. at 326; *see also Evans*, 290 Va. at 184; *Jones*, 227 Va. at 181; *Vasilion*, 192 Va. at 740; *In re Bunker*, 312 F.3d at 151-52; *Reid v. Richardson*, 304 F.2d 351, 353 (4th Cir. 1962).[16]

B.

Under the early common law, a tenancy by the entirety protected only real property. *See* 2 American Law of Property, *supra*, § 6.6, at 30. In *Oliver v. Givens*, as a matter of first

_____

[16] This case does not present an opportunity to address the efficacy of "an attempt to convey property to spouses as joint tenants with the right of survivorship," Melnick, *supra*, § 8.3, at 1072-73 (suggesting that "[t]he interplay between section 55.1-134(B), allowing survivorship estates, and the common law notion of the 'oneness' of a married couple would appear to convert the tenancy automatically (in Virginia) to a tenancy by the entirety" and noting "[a]n old and brief line of cases indicat[ing] this result").

impression, we held that "personal property as well as realty may be held by a husband and wife as tenants by the entireties." 204 Va. 123, 126 (1963). We applied this principle to "proceeds derived from a voluntary sale of real estate held by the entireties," holding that these proceeds "are likewise held by the entireties." *See id.* at 126-27. We affirmed this holding in *Pitts* by holding that a promissory note given in exchange for the sale of real property also retained the tenancy-by-the-entirety status of the underlying property as proceeds of the sale. *See* 242 Va. at 260-61.

In 1999, the General Assembly enacted a statute confirming that personal property could be held as a tenancy by the entirety. *See* J. Rodney Johnson, *Wills, Trusts, and Estates*, 33 U. Rich. L. Rev 1075, 1081-82 (1999) (commenting on the enactment of former Code § 55-20.1). Personal property can include tangible and intangible property. In Virginia, "[a] chose in action is intangible personal property." *Huaman v. Aquino*, 272 Va. 170, 175 (2006); *see also First Nat'l Bank of Richmond v. Holland*, 99 Va. 495, 503 (1901). "Any right which has not been reduced to possession is a chose in action." *Holland*, 99 Va. at 503. A contractual right, including a right to insurance payments, is a classic example of a chose in action. *See* 17 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 49:119, at 106-07 (4th ed. 2015) ("A contract of insurance is a chose in action. That is to say, it confers a right to bring a legal action to recover a sum of money ex contractu, or from or out of the contract . . . .").[17]

---

[17] *Pitts* held that former Code §§ 55-20 and -21 "were intended to apply to joint tenancies and to tenancies by the entireties created by an 'instrument' of conveyance or devise" and not by promissory notes, which are mere "memorials of a chose in action," and consequently, "[t]he fact that those notes and the deed of trust securing the debt they represent contain no language evincing a survivorship intent is wholly immaterial to the question before us." *Pitts*, 242 Va. at 260. In 2001, however, the General Assembly amended former Code § 55-21, clarifying that the statute applied to "the instrument transferring such property or memorializing the existence of a chose in action." Code § 55-21 (2001); *see* J. Rodney Johnson, *Wills, Trusts, & Estates*, 35 U. Rich. L. Rev. 845, 850-51 & n.26 (2001). The General Assembly similarly clarified former

C.

In this case, Terry and Cathy Phillips argue that the insurance policy confirms that they collectively owned a contractual right to the insurance payments as tenants by the entirety with the common-law right of survivorship. We disagree.

1.

In Virginia, the "'named insured' is the policyholder. An 'insured' is simply a party who may be covered under the policy. Not all 'insureds' are 'named insureds.'" *Atkinson v. Penske Logistics, LLC*, 268 Va. 129, 135 (2004); *see also* 7A Steven Plitt et al., Couch on Insurance 3d § 110:1, at 110-5 (2013 rev. ed.). We do not accept the simplistic assertion that "the term 'named insured' [should] be read as though the word 'named' is simply an adjective modifying the noun 'insured.'" *Atkinson*, 268 Va. at 135. In property- and casualty-insurance policies, only the "present named insured" is the legally recognized "[p]olicyholder." *See* Code § 38.2-602.

Terry Phillips was the sole policyholder on the Chubb policy and the only named insured. On 21 separate occasions, the insurance policy and riders specifically identified him alone as the named insured. *See* J.A. at 20-23, 26-28, 31-39, 91-95. The policy and riders nowhere mentioned Cathy Phillips by name.[18] Cathy Phillips merely appeared, at best, to be an unnamed insured "spouse" included in the definition of "[y]ou" in the general provisions of the policy. *See id.* at 40. While this provision no doubt gave Cathy Phillips a contractual interest in the insurance payments, we are skeptical of her claim that this provision, standing alone, created the

Code § 55-20.1, current Code § 55.1-135, by adding the language "written memorial of a chose in action." *See* Johnson, *supra*, at 850-51 & n.26 (2001). That language has survived in the 2019 recodifications of Code §§ 55.1-134 and -135.

[18] This fact implicates a question that we need not resolve in this case: Can an instrument create a tenancy by the entirety while wholly omitting the name of one of the spouses? *See, e.g.*, W.W. Allen, Annotation, *Estates by Entirety in Personal Property*, 64 A.L.R.2d 8, § 27 (1959) (discussing whether personal property held in one name only is sufficient to create a tenancy by the entirety).

21

requisite common-law unities to form a tenancy by the entirety, which involves taking "one and the same interest or estate, arising by one and the same conveyance, commencing at one and the same time, and held by one and the same undivided possession." 1 Minor & Ribble, *supra*, § 839, at 1086 (defining the four unities); *see* 41 C.J.S. *Husband and Wife* § 22 (2020) (stating that tenants by the entirety take "identical interests simultaneously by the same instrument and with the same right of possession").

We need not answer that difficult and nuanced question, however, because a more fundamental flaw defeats the tenancy by the entirety claimed in this case. A tenancy by the entirety cannot exist unless the parties manifest some intent to create it. Disputing this premise, Terry and Cathy Phillips argue that *Oliver* and *Pitts* stand for the proposition that a manifestation of intent is not required for personal property to be held as a tenancy by the entirety. We disagree. *Oliver* and *Pitts* addressed the sale of real property held as a tenancy by the entirety. We merely held that the proceeds from the sale of that property retain the *preexisting* tenancy-by-the-entirety status of the property sold. *See Pitts*, 242 Va. at 261-62; *Oliver*, 204 Va. at 126-27. It did not matter to us in *Pitts* that the buyer's promissory notes "contain[ed] no language indicating a right of survivorship." *Pitts*, 242 Va. at 256. The title to the property clearly did — it had been conveyed to George and Ellen Pitts "as tenants by the entirety with the right of survivorship as at common law." *Id.* at 257 (citation omitted). We have never held that right-of-survivorship or tenancy-by-the-entirety language is unnecessary for personal property generally. To be sure, doing so would violate the admonition in *Pitts* to "leave the choice between competing public-policy interests to the General Assembly," *id.* at 262.

2.

Terry and Cathy Phillips contend that even if some manifestation of intent is required, the Chubb insurance policy created a tenancy by the entirety by expressly providing for the right of survivorship. We again disagree.

The right of survivorship is not simply the right of a surviving joint tenant to retain his or her proportionate share after the death of the other tenant. That truism would be true of "survivorship" in a mere tenancy in common. The "right of survivorship" of a tenancy by the entirety means that "[u]pon the death of either spouse the whole of the estate by the entireties remains in the survivor." *Vasilion,* 192 Va. at 740; *see supra* at 18-19. "This is so not because he or she is vested with any new interest therein, but because in the first instance he or she took the entirety which, under the common law, was to remain in the survivor." *Vasilion*, 192 Va. at 740. This powerful attribute of a tenancy by the entirety means that upon the death of one spouse, the other spouse receives everything. *See* Guare, *supra*, § 3.204, at 144; Melnick, *supra*, § 8.203, at 1068. The decedent's estate, his heirs, his children, his creditors — they receive nothing because property held in a tenancy by the entirety is a non-probate asset. *See* 2 Frank O. Brown, Virginia Practice Series: Probate Handbook §§ 1.1, 3.5, at 7, 96 (2019-2020 ed.); Rogers, *supra*, § 10.402, at 835. "[T]he surviving spouse owns all of the property by operation of law and nothing passes to the deceased spouse's heirs, distributees, or beneficiaries." Guare, *supra*, § 3.204, at 144.

No provision in the Chubb insurance policy used the expression "tenants by the entireties" or "tenants by the entirety," Code § 55.1-136(A); *see* Code § 55.1-135. Nor did any provision state that Terry and Cathy Phillips hold whatever interest they may have with the "right of survivorship" as at common law. *See* Code § 55.1-135. In other words, no provision of this policy can be construed to say that upon the death of the policyholder, the *entire* insurance

23

payout would go *not* to the decedent's estate but *solely* to his spouse, a mere additional insured. The policy implied just the opposite. It stated:

> In the event of your death, we cover your spouse, your legal representative or any person having proper temporary custody of your property until a legal representative is appointed and qualified, but only with respect to your premises and other property covered under the policy at the time of death. We will also cover any member of your household who is a covered person at the time of death.

J.A. at 83.

This event-of-death provision said nothing more than the insurer's contractual *coverage* obligations *survive* the death of one of the contracting parties. It "is a standard clause in many, if not most, contractual instruments used in a host of transactions." *See Wood v. Martin*, 299 Va. ___, ___, Record No. 190738, slip op. at 12 (October 22, 2020). In this context, it simply meant that the insurer's contractual duties will continue to inure to the benefit of (i) the decedent's "spouse," *and* (ii) any "legal representative . . . appointed and qualified" to represent his estate, *and* (iii) any other "covered person" under the policy. *See* J.A. at 83.

A true right-of-survivorship provision would not (and could not) have said any of this. It would have said either, "upon your death, any payments under this policy shall be paid exclusively to your spouse and to no one else," or "all contractual rights and proceeds belonging to you under this policy, upon your death, shall belong exclusively to your spouse." Only then would "the whole of the estate," *Vasilion,* 192 Va. at 740, go exclusively to Cathy Phillips upon the death of Terry Phillips. In short, saying to the named insured, "we cover your spouse if you die" is not the same thing as saying "your spouse (and no one else) receives your rights under the contract upon your death." The Chubb policy contains no language describing a common-law right of survivorship.

24

The event-of-death provision, moreover, appeared in the "General Provisions" section of the policy, J.A. at 83, and governed all aspects of the policy's coverage. It provided contractual rights to all "covered person[s]," *id.*, under the policy — which included persons other than Terry and Cathy Phillips. The policy's "Personal Liability Coverage," for example, protected the named insured, as well as any "family member," any permitted users of vehicles or watercraft, and "any person or organization with respect to their legal responsibility for covered acts or omissions" of the named insured or a "family member." *Id.* at 70. These other "covered" persons shared in the non-exclusive contractual rights owed by the insurer separately to all insureds, not just Terry and Cathy Phillips. Nothing in the Chubb insurance policy, therefore, attempted to satisfy the common-law unities sufficient to silo within it a tenancy by the entirety for Terry and Cathy Phillips.

## IV.

In sum, the circuit court erred in dismissing the garnishment under Code § 55.1-136(C). A disposition involves an "act of *transferring* something to another's care or possession" or "the relinquishing of property," Black's Law Dictionary 592 (11th ed. 2019) (emphasis added). The property in this case was not transferred to the insurer or to anyone else. There being no disposition of the property, Code § 55.1-136(C)'s statutory immunity does not apply. We also reject the alternative argument raised by Terry and Cathy Phillips that they held the contractual right to the insurance payments as tenants by the entirety. Even if they did have the requisite common-law unities (a question that we do not resolve), the insurance policy nowhere created a contractual right held by them with the common-law right of survivorship, an essential attribute of a tenancy by the entirety. For these reasons, we reverse the judgment dismissing the garnishment action and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*

25

JUSTICE GOODWYN, with whom JUSTICE MIMS and JUSTICE POWELL join, dissenting.

My colleagues in the majority hold that insurance payments, owed to a husband and wife because of the fire loss of property entitled to immunity under Code § 55.1-136(C)[1], are not exempt from garnishment by a separate creditor of one of the spouses. I respectfully disagree.

I.

Terry Marshall Phillips (Mr. Phillips) and his wife, Cathy Sue Phillips (Mrs. Phillips), originally owned their home and its contents (the Residence) as tenants by the entireties. In 2010, they retitled the Residence to their trusts, the Terry Marshall Phillips Revocable Trust and the Cathy Sue Phillips Revocable Trust. Code § 55.1-136(C) gives such trust property the same immunity from the claims of the spouses' separate creditors as the property would have had if it continued to be held as tenants by the entireties.

The Residence was covered by a homeowners insurance policy (the policy) issued by Chubb. The policy states that "[t]his policy is a contract between you and us." The policy defines "you" as "the person named in the [c]overage [s]ummary, and a spouse who lives with that person." Mr. Phillips is the person named in the policy's coverage summary. It is undisputed that at all times relevant to this case, Mrs. Phillips was Mr. Phillips' spouse and she lived with Mr. Phillips. Thus, "you" is Mr. and Mrs. Phillips. The policy defines "us" as Chubb. The policy requires Chubb to pay Mr. and Mrs. Phillips in the event of physical loss of the Residence. In February 2018, the Residence was lost to fire, and a claim was filed with Chubb.

---

[1] In October 2019, Code § 55-20.2 was amended and reenacted as Code § 55.1-136, which contains near-identical language as the former Code § 55-20.2. 2019 Acts ch. 712. To be consistent with the majority, we will also refer to the current statute.

26

Chubb proceeded to pay Mr. and Mrs. Phillips for the damage, destruction, and loss of their property. It sent two checks as partial payment of the Phillipses' claim. The checks were made payable to Mr. Phillips and Mrs. Phillips.[2] Chubb made additional payments on the claim by wiring the payments to an account that Mr. and Mrs. Phillips owned as tenants by the entireties. Additional amounts were owed on the claim when, on March 2, 2018, Andrea Gail Jones (Ms. Jones), who has a judgment against Mr. Phillips, but not Mrs. Phillips, instituted a garnishment action in the Circuit Court of Powhatan County, seeking to garnish any subsequent homeowners insurance proceeds Chubb owes to Mr. Phillips.[3]

Mr. Phillips and Mrs. Phillips each filed motions to quash and dismiss the garnishment. They argued that the homeowners insurance payments were exempt from garnishment because Ms. Jones' judgment lien could not attach to the Residence, and it should follow that it cannot attach to any proceeds resulting from the damage, destruction, or loss of the Residence, pursuant to Code § 55.1-136(C). The Phillipses also argued that, regardless of the applicability of Code § 55.1-136(C), the proceeds from the policy are personal property owned by them as tenants by the entireties, and as such, are exempt from Ms. Jones' garnishment for a debt owed solely by Mr. Phillips.

The circuit court entered an order granting the Phillipses' motions to quash, ruling that the insurance payments were proceeds of a disposition and thus exempted from garnishment under Code § 55.1-136(C). It noted that its ruling was consistent with that of other jurisdictions that had examined the issue, stating that "cases in other jurisdictions have held that insurance

---

[2] The checks also listed Goodman-Gable Gould Adjusters International as a payee. The Phillipses hired these adjusters to assist them with filing their insurance claim.

[3] In 2013, Ms. Jones prevailed in an unlawful termination claim. As part of that litigation, a federal district court entered a judgment award against Mr. Phillips, who had served as chairman and majority shareholder of a corporation that formerly employed Ms. Jones.

27

proceeds that derive from property that was held as tenants by the entirety are likewise deemed to be owned as tenants by the entirety." *See* J.A. at 324 (citing *Cooper v. Cooper*, 284 S.W.2d 617 (Ark. 1955)).

This appeal followed.

## II.

The issue of whether the circuit court erred in its application of Code § 55.1-136(C) is a question of statutory interpretation, which is a pure question of law that we review de novo. *JSR Mech., Inc. v. Aireco Supply, Inc.*, 291 Va. 377, 383 (2016). Although the satisfaction of the other requirements of Code § 55.1-136(C) is not disputed, the parties disagree as to whether the insurance payments from Chubb are the "proceeds of [a] sale or disposition." Code § 55.1-136(C) states, in relevant part:

> [A]ny property of spouses that is held by them as tenants by the entirety and conveyed to their joint revocable or irrevocable trusts, or to their separate revocable or irrevocable trusts, and any proceeds of the sale or disposition of such property, shall have the same immunity from the claims of their separate creditors as it would if it had remained a tenancy by the entirety, so long as (i) they remain married to each other, (ii) it continues to be held in the trust or trusts, and (iii) it continues to be their property, including where both spouses are current beneficiaries of one trust that holds the entire property or each spouse is a current beneficiary of a separate trust and the two separate trusts together hold the entire property, whether or not other persons are also current or future beneficiaries of the trust or trusts.

The majority concludes that the homeowners insurance payments were not the proceeds of a disposition because a disposition of property requires the act of transferring property. *See ante* at 5-6. I disagree with the majority's conclusion that property can only be disposed of by transferring its ownership or possession.

Quoting an aphorism attributed to Albert Einstein, our Court has previously stated "everything should be made as simple as possible, but not simpler." *Levick v. MacDougall*, 294 Va. 283, 291 (2017). In reaching its conclusion regarding the plain meaning of "disposition," as

28

the word is used in Code § 55.1-136(C), the majority fails to consider all of the definitions for disposition in Black's Law Dictionary, and it also fails to consider meanings of the word not found in the "vocabulary of law." Unfortunately, the problematic result of this shortcoming is further compounded because consideration of the varying definitions of the word "disposition" leads to an understanding of the term's ambiguity, which needs to be addressed in interpreting its meaning in the context of Code § 55.1-136(C).

The majority appears to resolve this case on the basis of a Black's Law Dictionary definition of disposition that was not argued before the circuit court or this Court, and to reverse the circuit court based upon an argument that the circuit court did not have the opportunity to consider. The parties and the circuit court failed to discern any jurisprudential rationale for choosing the particular sub-definition from Black's Law Dictionary found by the majority to be definitive. Perhaps it is because the circuit court and the parties considered other sources in addition to Black's Law Dictionary in their attempts to interpret the meaning of the statutory language, but no party to this action has asserted that the resolution of the issue of the meaning of disposition as used in Code § 55.1-136(C) was as simple as deferring to a particular Black's Law Dictionary definition– not Ms. Jones, not the Phillipses, and not the circuit court. In fact, the Black's Law Dictionary definition of disposition is not mentioned at all in any briefing or arguments before the circuit court or this Court.

Regarding Ms. Jones' argument concerning why the insurance proceeds are not a disposition under Code § 55.1-136(C), I believe it is best to directly quote from her brief:

> The trial court's holding that the proceeds of the Policy was a disposition under [the statute] is incorrect. First, such a finding contradicts the statement of [the] *Pitts* Court, which explicitly chose not to extend [tenancy by the entirety] protections to proceeds from a homeowner's insurance policy. Second, since the holding in *Pitts*, the Legislature has taken no affirmative action to extend protections to homeowner's insurance contracts.

29

Still, if forced to categorize the payment of proceeds from an insurance contract under the current framework, the proceeds are at most a partial disposition of the underlying property. As is the case here, the owners of the real property retain it, even when catastrophe strikes.

As stated above, the Legislature adopted the rule from *Oliver* extending the protection to proceeds from the voluntary sale or disposition. No disposition occurred in the instant case; the Phillips[es] retain all the sticks in the Property's bundle. They retain ownership of the Property, remain seized of the land, and retain the requisite unities, continuing to own the Property as tenants by the entireties. The Property has been neither sold, nor devised, nor given away. Given the long history of [tenancy by the entirety], "sale or disposition" could be interpreted to apply only to the sale, gift, or devise of the property by the spouses.

It logically follows that personalty protection could extend to those situations in which the entire bundle of sticks was exchanged. It also follows logically that an owner may sell their land and that an author needs a legal-catch-all phrase for which "disposition" covers the gamut. Still, [the statute] speaks only to the total disposition of the marital asset, which the receipt of proceeds from an insurance contract are not.

Brief for Appellant at 22-23.

As noted by Ms. Jones, "sale or disposition" *could* be interpreted to apply only to the sale, gift, or devise of property. However, we must determine if it *should* be interpreted that way.

In interpreting a statute, we "apply the plain language of a statute unless the terms are ambiguous or applying the plain language would lead to an absurd result." *Boynton v. Kilgore*, 271 Va. 220, 227 (2006) (internal citations and quotation marks omitted). Statutory language is ambiguous if it is subject to more than one reasonable interpretation, "lacks clarity and precision," or is "difficult to comprehend." *Herndon v. St. Mary's Hosp. Inc.*, 266 Va. 472, 475 (2003). We also presume that every part of a statute has "some effect and no part will be considered meaningless unless absolutely necessary." *City of Richmond v. Virginia Elec. & Power Co.*, 292 Va. 70, 75 (2016) (quoting *Lynchburg Div. of Soc. Servs. v. Cook*, 276 Va. 465, 483 (2008)).

Proceeds are defined as "what is produced by or derived from something (as a sale, investment, levy, business) by way of total revenue; the total amount brought in" or "the net sum received (as for a check, a negotiable note, an insurance policy) after deduction of any discount or charges." Webster's Third New International Dictionary 1807 (1993). It is "the value of land, goods or investments when converted into money." Black's Law Dictionary 1458 (11th ed. 2019). It is undisputed that the insurance payments are not proceeds of a sale; at issue in this case is whether the insurance payments are the proceeds of a disposition.

The majority uses what it terms as a "vocabulary of law" definition of disposition as the word's plain meaning in the statute. *See ante* at 4-5. It indicates that disposition is required to be interpreted according to one of its definitions in Black's Law Dictionary, and only considers definitions from that source. There is no Virginia authority that supports doing so.

In Black's Law Dictionary, disposition is defined as:

1. The act of transferring something to another's care or possession, esp[ecially] by deed or will; the relinquishing of property.
2. A final settlement or determination.
3. Temperament or character; personal makeup.

Black's Law Dictionary 592 (11th ed. 2019). The majority examines the definitions from Black's Law Dictionary and correctly determines that the Residence, which was destroyed by fire, did not have a person's "temperament or character," so the third definition was inapplicable in this instance. *See ante* at 5-6. I agree. However, it did not cite or consider the second definition of disposition, which may have some bearing on the meaning of disposition as used in the relevant statute. Instead, the majority concludes that, in the "vocabulary of law," disposition as used in Code § 55.1-136(C) should be defined, essentially, as it is described in the first definition in the most current edition of Black's Law Dictionary, as "[t]he act of *transferring* something to another's care or possession [especially by deed or will]" or "the relinquishing of

31

property." *See ante* at 4-5 (citing Black's Law Dictionary 592 (11th ed. 2019), adding emphasis on transferring). Putting aside the majority's failure to consider the second definition of disposition in Black's Law Dictionary and its unexplained emphasis on the word "transferring" in reaching its conclusion concerning the meaning of disposition as used in Code § 55.1-136(C), the majority's analysis also suffers from the fact that Black's Law Dictionary is but one source to consider in attempting to determine the meaning of statutory language used by the General Assembly, and needless to say, the law dictionary is not always the best source for determining plain meaning.

Consideration of the definition of a word as found in a common usage dictionary is often a worthwhile endeavor in the search for the word's plain meaning. In such a dictionary, disposition is defined as: "the act or the power of disposing or disposing of or the state of being disposed or disposed of; as a: administration, control, management; b: a placing elsewhere, a giving over to the care and possession of another or the relinquishing" and "c: an ordering or arranging or a state of being ordered or arranged usu[ally] systematically or in an orderly way and esp[ecially] as part of a whole." Webster's Third New International Dictionary 654 (1993).

The majority properly acknowledges that in the past, disposition has also been defined as the "[a]ct of disposing; *transferring* to the care or possession of another" or "[t]he parting with, alienation of, or giving up of property." *See ante* at 5 (citing Black's Law Dictionary 471 (6th ed. 1990), adding emphasis to transferring). It is also worth considering that in an even earlier edition of Black's Law Dictionary, disposition was also defined as "[a] destruction of property." Black's Law Dictionary 558 (4th ed. 1957) (citations omitted).

Given the broadly varying definitions of "disposition," which are discerned upon considering various sources and definitions, as did the parties and the circuit court, I believe that the meaning of disposition as used in Code § 55.1-136(C) is ambiguous. As there is no

32

precedent for the adoption of a "vocabulary of law" definition, which is but one of several meanings which could be ascribed to the word "disposition," I disagree with the majority's conclusion that a disposition of property cannot occur without the property being transferred.

When we find a term to be ambiguous, we resort to rules of statutory construction, which can include an analysis of legislative and jurisprudential history. *See Virginia-American Water Co. v. Prince William Cty. Serv. Auth.*, 246 Va. 509, 514 (1993); *see also Newberry Station Homeowners Ass'n v. Board of Supervisors*, 285 Va. 604, 614 (2013) ("When the language of an enactment is free from ambiguity, resort to legislative history and extrinsic facts is not permitted."). Ultimately, "we must apply the interpretation that will carry out the legislative intent behind the statute." *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007).

In her brief, Ms. Jones implicitly asserts that the meaning of disposition as used in Code § 55.1-136(C) is ambiguous. As noted above, in her attempt to discern the meaning of disposition as used in the statute, Ms. Jones looks to the historical development of the tenancy by the entirety doctrine in Virginia, and concludes that "sale and disposition" as used in Code § 55.1-136(C) "could be interpreted" to apply only to the total voluntary disposition of marital assets through the sale, gift, or devise of property by the spouses. She asserts that the use of the word is limited to the total disposition of marital assets because of related tenants by the entireties precedent, specifically *Oliver v. Givens*, 204 Va. 123 (1963) and *Pitts v. United States*, 242 Va. 254 (1991).

Ms. Jones notes that *Oliver*, in which this Court first recognized that personal property could be held as tenants by the entireties, and *Pitts*, which followed the ruling in *Oliver*, both involved a voluntary, complete exchange of the real property for personalty. In both cases, our Court ruled that the proceeds from the voluntary sale of property owned by spouses as tenants by

33

the entireties are likewise owned and held by them as tenants by the entireties. *See Oliver*, 204 Va. at 126-27; *Pitts*, 242 Va. at 262. Ms. Jones claims that when the General Assembly acts, it must be presumed to do so with the full knowledge of this Court's previous decisions, and that the General Assembly's decision not to include the word "partial" or another modifier before disposition in Code § 55.1-136(C) means that disposition is limited to voluntary and complete dispositions because the voluntary sales of real estate approved by this Court in *Pitts* and *Oliver*, as producing personal property proceeds held as tenants by the entireties, were voluntary and complete dispositions.

According to Ms. Jones, in this case, no disposition occurred as the term is used in Code § 55.1-136 because the admittedly catastrophic fire was presumably not voluntary, and the conceded resulting disposition of the property by fire was only partial, because the Phillipses retained some rights in the Residence after the fire. Ms. Jones avers that because the disposition of the Residence was not voluntary or complete, the circuit court erred in ruling that the insurance payments were the proceeds of a disposition and that Code § 55.1-136(C) exempted the proceeds from garnishment. I disagree.

As noted by the majority, tenancy by the entirety is one of the co-tenancies that existed at common-law that has survived to modern times. 48A C.J.S. *Joint Tenancy* § 1 (March 2020 update). Because a tenancy by the entirety is "[b]ased on the [common-law] fiction of the unity of husband and wife," property owned by this tenancy is "immune from the claims of creditors against either husband or wife alone." *Vasilion v. Vasilion*, 192 Va. 735, 740, 742 (1951).

Historically, this tenancy, and therefore the protection from separate creditors, only applied to real property. *See* 2 Raleigh C. Minor, *The Law of Real Property* §§ 837, 852 (Frederick D.G. Ribble ed. 1928) (explaining that an estate in joint tenancy exists in land or tenements and stating that a tenancy by the entirety is governed by nearly identical principles as

34

joint tenancies); *see also Vasilion*, 192 Va. at 740 (discussing how the right of a creditor to attach land is of no use where the realty is subject to a tenancy by the entirety). However, decisions of this Court and acts by the General Assembly have expanded the application of this form of tenancy to include personal property as well.

In *Oliver* we determined, as an issue of first impression, that Virginia law allows personal property, not just real property, to be held by the entirety. 204 Va. at 126. We then stated that "[i]n those jurisdictions which recognize a tenancy by the entirety in personal property it is almost universally held that, in the absence of an agreement or understanding to the contrary, the proceeds derived from a voluntary sale of real estate held by the entireties are likewise held by the entireties." *Id.* at 126-27. The Court then ruled in accordance with those referenced cases from other jurisdictions and held, as a matter of first impression in Virginia, that the personal property proceeds, from the voluntary sale of real property held as tenants by the entireties, are also held as tenants by the entireties, absent an agreement or understanding otherwise. *Id.* at 127.

Later, in *Pitts*, we were asked to determine whether our holding in *Oliver* applied to another type of personal property, payments received on promissory notes exchanged as part of a voluntary sale of real estate that was held by the entirety. 242 Va. at 256-57. We reiterated the rule adopted in *Oliver*, and ruled that the promissory notes were proceeds of the voluntary sale of the real estate held by the entirety, and as such, pursuant to our decision in *Oliver*, the notes and the payments on the notes were personal property proceeds held by the entirety. *Id.* at 261-62. Although the Court acknowledged that other jurisdictions, which recognized that personalty could be owned as tenants by the entireties, had extended the *Oliver* rule to proceeds from other types of disposals and conversions of property, including "payments of insurance claims and judgments resulting from injury to realty," the Court declined to extend the rule beyond the facts

35

articulated in *Oliver*. *Pitts*, 242 Va. at 262. We stated "[w]e leave the choice [of further extending the entireties doctrine to other types of proceeds] to the General Assembly." *Id.*

Perhaps accepting this Court's invitation to do so, the General Assembly has clearly acted to extend the benefits of the entireties doctrine. The General Assembly has specifically provided that "[p]ersonal property may be owned as tenants by the entirety, whether or not the personal property represents the proceeds of the sale of real property." Code § 55-20.2(B) (2001). Thus, it eliminated the assertion that personal property must be the proceeds of a transfer of real property in order to be owned as tenants by the entireties. The General Assembly also expanded the instances in which certain real and personal property, originally held by a husband and wife as tenants by the entireties, would retain the same immunity from the claims of separate creditors as if it continued to be held by tenancy by the entirety, although it was no longer held as such. *Id.* Specifically, the General Assembly provided that

> [t]he principal family residence of a husband and wife that [was] held by them as tenants by the entireties and conveyed to their joint revocable or irrevocable trust, or in equal shares to their separate revocable or irrevocable trusts, *shall have the same immunity from the claims of their separate creditors as it would if it had remained a tenancy by the entirety*, so long as (i) they remain husband and wife, (ii) it continues to be held in the trust or trusts, and (iii) it continues to be their principal family residence.

*Id.* (emphasis added).

In 2006, the General Assembly amended that statute to extend the protection afforded by Code § 55-20.2(B) to *any* property formerly owned by a husband and wife as tenants by the entireties, instead of just to property that continued to be their principal family residence. Code § 55-20.2(B) (2006).

In 2015, the General Assembly amended Code § 55-20.2(B) again, expanding its application further by adding the language that is at issue in this case. *See* Code § 55-20.2(B)

36

(2015).[4]  The amendment provided that not only is property held in the trust protected from the claims of separate creditors as it would have been if it had remained a tenancy by the entirety, but "any proceeds of the sale or disposition of such property" are also entitled to the same protection.  *Id.*  The General Assembly, through this amendment, expressly expanded the type of proceeds that are afforded the same protection from creditors as the property from which it is derived, beyond the parameters of the rule this Court recognized in *Oliver* and *Pitts*, which restricted such protection to the proceeds derived from the voluntary sale of real estate.

> In *Pitts*, we stated

> We are aware that, in several jurisdictions which recognize that personalty can be owned as a tenancy by the entirety, the rule that we applied to the proceeds of voluntary sales of realty owned by the entireties in *Oliver* has been extended to the proceeds of other kinds of disposal or conversion of real estate.  For example, some courts have applied the rule to the proceeds of judicial sales, condemnations, and mortgages; to the surplus remaining after foreclosure; to payments of insurance claims and damage judgments resulting from injury to realty; and to the derivatives of proceeds of voluntary sales.

*Pitts*, 242 Va. at 262 (internal citation and quotation marks omitted).  We stated that we left the choice to the General Assembly to extend the rule articulated in *Oliver* and *Pitts*.  *Id.*

Through Code § 55.1-136(C),[5] the General Assembly expressly extends the rule stated in *Oliver* to "any proceeds of the sale or disposition of such property."  Note that in Code § 55.1-136(C), unlike in the rule expressed in *Oliver*, the proceeds immunized from the claims of separate creditors of the spouses are not limited to the proceeds which are derived from the voluntary sale of real property.  The immunity applies to all proceeds, including those from

---

[4] In 2017, the General Assembly amended the statute to its most recent form before its 2019 amendment and reenactment as Code § 55.1-136, inserting a new subsection (B) and moving the existing subsection (B) to subsection (C).  Code § 55-20.2 (2017).

[5] *See supra* note 4.

personal property, as well as real property and it includes proceeds from involuntary sales as well as voluntary sales; it also applies to proceeds from any other type of disposition of real or personal property.

As noted by the circuit court, and alluded to in dicta by our Court in *Pitts*, other jurisdictions which recognize that personal property may be owned by tenants by the entireties, have afforded tenants by the entireties protection to insurance proceeds paid to replace or repair such property, absent an agreement otherwise. *See Cooper v. Cooper*, 284 S.W.2d 617, 620 (Ark. 1955); *Regnante v. Baldassare*, 448 N.E.2d 775, 777-78 (Mass. App. Ct. 1983); *Gaunt v. Shelter Mut. Ins.*, 808 S.W.2d 401, 404-05 (Mo. Ct. App. 1991); *cf. McDivitt v. Pymatuning Mut. Fire Ins.*, 449 A.2d 612, 615-16 (Pa. Super. 1982) (finding based on the facts of the case that there was an agreement otherwise).

"We presume that when the General Assembly enacts legislation, it is aware of this Court's precedents." *Lambert v. Sea Oats Condo. Ass'n*, 293 Va. 245, 254 (2017); *Philip Morris USA Inc. v. Chesapeake Bay Found., Inc.*, 273 Va. 564, 576 (2007). Further, we presume "that the legislature has purposefully chosen the precise statutory language, 'and we are bound by those words when we apply the statute.'" *David v. David*, 287 Va. 231, 240 (2014) (quoting *Halifax Corp. v. First Union Nat'l Bank*, 262 Va. 91, 100 (2001)).

The General Assembly's choice of the word "disposition" as used in Code § 55.1-136(C), to extend the application of tenants by the entireties protection against creditors to additional types of proceeds from property owned by spouses, was purposeful, deliberate, and with knowledge of our previous decisions in this area of the law, and the various meanings of the word. Disposition was used in addition to the word "sale." Recognizing that the meaning of disposition as used in the statute should not be duplicative of the term "sale," which in the statute is not limited to voluntary sales, indicates that disposition has to mean something other than the

38

transfer of property for a price. Disposition's meaning may include a gift of property, as mentioned by Ms. Jones, but that is not relevant to the analysis of the present statute because that type of disposition would not provide proceeds. Disposition as used in Code § 55.1-136(C) must have been intended to have a broader meaning than that articulated by the majority or Ms. Jones.

Disposition is a broad term, and it is used in the statute without qualification. Review of the language in Code § 55.1-136, this Court's relevant precedent, and the numerous legislative amendments and enactments passed by the General Assembly on these topics, leads to the conclusion that the meaning of disposition as used in Code § 55.1-136(C) is purposefully broad and the word is intended to be interpreted as having a broad meaning, the act or power of disposing; a disposition concerns the disposal of property. *See* Black's Law Dictionary 592 (11th ed. 2019); Webster's Third New International Dictionary 654 (1993). It can concern a final settlement or determination regarding property rights. *See* Black's Law Dictionary 592 (11th ed. 2019). It can mean to treat or to handle something with the result of finishing with it. *See* Webster's Third New International Dictionary 654 (1993). It can be a transfer or loss of property. In other words, a disposition may take many different forms as it relates to the property rights to realty and to personalty; it is a catch-all phrase which covers the gamut.

Property can be disposed of without it being transferred, such as by being discarded or destroyed. *See* Webster's Third New International Dictionary 654 (1993). A disposal or conversion can be accomplished voluntarily, as through sale, gift, devise, or abandonment of property; but it can also be accomplished involuntarily through foreclosure, condemnation, destruction, or other means. A disposition can be of the full disposition of rights to property, but it can also be a partial disposition of property or property rights, as through granting a lease on the property or an easement, or by conversion, partition, damages, or other means of partial loss

39

or relinquishment of property or its value. Code § 55.1-136(C) does not limit the type of disposition considered for purposes of the statute.

Through the use of the term "disposition," Code § 55.1-136(C) protects proceeds derived from the disposal of property against the claims of the spouses' separate creditors, no matter the manner in which such disposal results in proceeds that replace the property or value of the property which was entitled to immunity from creditors. Just as creditors are not prejudiced by a gift of property that is exempt from their claim, there is no prejudice to creditors in allowing proceeds that replace property or loss in value of property that was immune from the claims of a spouse's separate creditors to be immune also. *See Oliver*, 204 Va. at 127 (citing *Vasilion*, 192 Va. at 740; 1 Garrard Glenn, Fraudulent Conveyances § 172, at 313 (2d ed. 1931); 24 Am. Jur., *Fraudulent Conveyances*, § 109 (1983); 37 C.J.S., *Fraudulent Conveyances*, §§ 29-a, 30).

There are no indicia that the General Assembly intended to limit the meaning of disposition to instances in which property rights are transferred, as the majority has ruled. Nothing in our prior cases or the language of the relevant statute supports limiting the meaning of disposition to the particular Black's Law Dictionary definition that the majority has concluded is the proper interpretation of the word. The majority has adopted an overly restrictive definition of the word "disposition." *See, e.g.*, *Brown v. Commonwealth*, 284 Va. 538, 542 (2012) (observing that the Court "will not apply an unreasonably restrictive interpretation of [a] statute" and that "[t]he plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction" thereof) (citations and internal quotation marks omitted).

The majority's particularized "vocabulary of law" definition of disposition conflicts with the obligation to give the language of the statute its plain meaning, and it is also contrary to the apparent intent of the General Assembly. It is clear from the legislative history of the statutes

40

discussed above that the General Assembly has purposefully decided to expand the protection provided to tenancies by the entireties properties to certain trust property, and to all dispositions of such properties which result in proceeds. The majority's holding, which restricts the definition of dispositions to only those dispositions which concern transfers of property is at odds with that intent. The interpretation put forth by the majority allows a married couple protection from individual creditors for proceeds from the sale of property held by them under the provisions of Code § 55.1-136(C), but allows creditors to attach the proceeds paid to replace the property if compensation is paid because of the property's loss by negligence, calamity, or any other manner which is not a transfer. I do not believe that was the intent of the General Assembly.

According to the majority, the General Assembly by using the word "disposition," intended to protect the proceeds from the transfer of property from a separate creditor, but allow that separate creditor to garnish proceeds paid to the spouses for loss of property in instances when the property is disposed of, but neither the ownership or the possession of the property is transferred. Under the majority's view, if a married couple has a piece of expensive equipment, that they own as tenants by the entireties and place in a trust pursuant to Code § 55.1-136(C), and they subsequently sell that equipment to a neighbor, the proceeds of a sale would be protected from garnishment by a creditor of only one of the spouses, because there was a transfer of the property from the couple to the neighbor. However, if that same neighbor destroyed the couple's equipment through an act of negligence, and was required to pay the couple for that property, the payments from the neighbor would be subject to a garnishment by a separate creditor of one of the spouses because there was no transfer of the property. The same is true when insurance payments are made to the spouses because of loss or damage to trust property subject to Code § 55.1-136(C). I do not believe that such disparate treatment is consistent with the intent

41

expressed by the General Assembly in extending the protections from separate creditors of the spouses to all proceeds from the dispositions of such property.

Considering the statute and the context in which it is used, the meaning of disposition is broad and "proceeds of a disposition" includes proceeds of any type of disposition, including the proceeds from all of the examples of disposals and conversions mentioned by our Court in *Pitts*. One of those examples was "payments of insurance claims and damage judgments resulting from [damage to property]." *See Pitts*, 242 Va. at 262 (citing 22 A.L.R. 4th 459 (1983)).

The payments owed to Mr. and Mrs. Phillips by Chubb were the proceeds of a disposition. In this instance, the Residence was literally disposed of when it was consumed by fire; Mr. and Mrs. Phillips lost the Residence due to the fire; the Residence no longer exists. Because of a contract of insurance, Chubb was required to pay Mr. Phillips and Mrs. Phillips for the value of the property lost to the fire. The insurance payments by Chubb were contractually required proceeds paid because of the involuntary disposition of the Residence. The checks made in payment of the homeowners insurance claim were made payable to both Mr. Phillips and Mrs. Phillips and prior insurance payments were wired to an account held by them as tenants by the entireties.

The circuit court did not err in holding that the insurance payments owed to the Phillipses were proceeds of a disposition of property they had previously owned as tenants by the entireties and that Code § 55.1-136(C) exempted those proceeds from Ms. Jones' garnishment action. Therefore, I would affirm the circuit court's judgment.

Accordingly, I respectfully dissent.

42